**Judy A. ZARECKI, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak, Defendant.**

**No. 95 C 1075.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 25, 1996.

Louis C. Cairo and Edward W. Pirok, Goldberg, Weisman and Cairo, Ltd., Chicago, IL, for plaintiff.

David R. Schmidt and Peter F. Higgins, Lord, Bissell & Brook, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Judy Zarecki ("Zarecki"), a reservation sales agent for National Railroad Passenger Corp. d/b/a ("Amtrak"), was diagnosed with carpal tunnel syndrome while

employed at Amtrak. Zarecki alleges that her condition developed because Amtrak required her to perform her job in an unsafe manner and failed to provide her with safe equipment. She seeks relief under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (1988), alleging that Amtrak was negligent. Amtrak now moves for summary judgment. For the reasons stated herein, Amtrak's motion is granted.

### RELEVANT FACTS

The following undisputed facts are gleaned from the parties' respective Local Rule 12(M) statements of material facts and accompanying exhibits.[1]

Zarecki began working for Amtrak as a reservation sales agent on November 1, 1983. Her duties included answering phones, checking schedules and routes, and making reservations. Like most modern day ticketing agents, Zarecki used a personal computer, an accompanying computer keyboard, and a phone headset with a microphone so that her hands were free to operate the keyboard. Zarecki performed these tasks while seated in an adjustable chair.

Zarecki has worked full time during her approximate twelve years at Amtrak. During each eight-hour work day, Zarecki had two scheduled breaks, one eighteen minute break and another forty-eight minute break for lunch. In addition, she was free to take a break and use the washroom, water fountain or coffee machine.

Although Zarecki did complain to fellow employees about her working conditions at Amtrak, she did not complain to any supervisor before she was first diagnosed with carpal tunnel syndrome. Zarecki specifically testified that she never complained to anyone at Amtrak about her working conditions before 1994 except for fellow workers. (Zarecki Dep. at 113–16). She did, however, complain to her supervisor in 1994.

Zarecki was diagnosed with carpal tunnel syndrome in 1992.[2] (Zarecki Dep. at 62). Zarecki first tried to alleviate her pain by taking medication, but eventually decided to undergo surgery in 1994 upon the suggestion of her physician. (Id. at 100). She returned to work without restrictions in August of 1994.

Zarecki contends that Amtrak caused her condition in one or more of the following ways: (1) failing to provide safe equipment and work space; (2) failing to provide proper work methods to avoid the repetitive nature of the work; (3) failing to provide proper training; (4) failing to properly supervise; and (5) failing to warn of the possibility of acquiring carpal tunnel syndrome. (Complaint ¶ 6).

Amtrak has submitted the report of an ergonomist, David T. Ridyard, President of Applied Ergonomics Technology, who investigated the work conditions at Amtrak and formed an opinion as to the risk of developing carpal tunnel syndrome from performing

1. Local Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." The movant's statement must contain "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth." Amtrak's statement shall be cited herein as "Def.'s Facts ¶___." Similarly, Local Rule 12(N)(3)(a) requires the nonmoving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. Zarecki's response shall be cited as "Pl.'s Facts ¶___." The nonmoving party may also submit a statement of "additional facts that require the denial of summary judgment," (cited herein as "Pl.'s Add'l Facts ¶___"), with respect to which the movant, in turn, may respond (cited herein as "Def.'s Resp. ¶___"). All material facts set forth in either party's statement are deemed admitted unless controverted by the statement of the opposing party. Local Rule 12(M) and 12(N)(3)(b); see also Flaherty v. Gas Research Inst., 31 F.3d 451, 453 (7th Cir.1994); Waldridge v. American Hoechst Corp., 24 F.3d 918, 921–22 (7th Cir. 1994).

2. **Carpal tunnel syndrome.** A condition resulting from pressure on the median nerve as it traverses the carpal tunnel (a deep space in the palmar or palm surface of the wrist); usually by fibers of the transverse carpal ligament. The condition is characterized by pain, tingling, burning, numbness, etc. in the areas supplied by the nerve, i.e., in the skin of the palm, fingers, wrist, etc. There may also be swelling of the fingers and atrophy of some of the muscles of the hand, especially those at the based of the thumb. 1 Schmidt's Attorney's Dictionary of Medicine, (MB) No. 28, at C–76 (Feb. 1995).

Zarecki's job. Ridyard's report notes that three potential carpal tunnel "risk factors" are generally associated with computer keying activities: (1) a very high number of repetitions; (2) non-neutral wrist postures; and (3) forceful exertions. Although these risk factors are generally associated with keying activities, Ridyard found that all of these factors were essentially absent at the Chicago Amtrak facility and he concluded that "there are no potential carpal tunnel syndrome and other upper extremity cumulative trauma disorder risk factors at the Chicago Amtrak facility" where Zarecki worked. (*See* Def.'s Ex. D, Ridyard Report).

Ridyard found that the number of keystrokes (per hand) per minute of a reservation sales agent at Amtrak was approximately 7 to 8, which is equivalent to approximately two words per minute. To assess this factor, Ridyard recorded the number of keystrokes during one-minute observations of twelve different sales representatives who were randomly selected. Ridyard also found that the sales agents could maintain their wrists in a neutral position, meaning that they were not bent significantly in any direction. None of the conditions that adversely affect a computer operator's ability to maintain neutral wrist positions, such as desks and chairs that are at an improper height, existed at the Chicago Amtrak facility. Indeed, Zarecki admits that she was able to keep her hands in a neutral position. (Pl.'s Facts ¶ 10). Finally, Ridyard found that the keyboards could be operated with low finger forces. (*See* Def.'s Ex. D, Ridyard Report).

Ridyard's expert report, which is uncontroverted, presents an evidentiary hurdle that Zarecki must overcome in order to survive Amtrak's motion for summary judgment. However, instead of presenting her own expert testimony regarding risk factors for carpal tunnel syndrome present at Amtrak's workstations, Zarecki relies almost exclusively on an affidavit by her treating physician, Dr. Farrell, to defeat Amtrak's motion for summary judgment.[3] Because of the para-

mount importance of Dr. Farrell's affidavit to Zarecki's efforts to survive Amtrak's motion, we quote it in its entirety:

1. I have been retained as an expert witness with respect to the above entitled cause on behalf of the Plaintiff, Judy Zarecki.

2. I make this Affidavit in opposition to the Defendant National Railroad Passenger Corporation's Motion for Summary Judgment.

3. My present business address is 7600 College Dr., Palos Heights, Illinois 60463.

4. I am duly licensed to practice medicine in the State of Illinois, and I am board certified in orthopaedic surgery in the State of Illinois.

5. I have examined the Plaintiff in this case, Judy Zarecki.

6. I have reviewed the medical records of Judy Zarecki.

7. It is my opinion based upon a reasonable degree of medical certainty that the Bilateral Carpal Tunnel Syndrome sustained by Judy Zarecki, was caused by her work duties as assigned by the Defendant National Railroad Passenger Corporation.

8. It is also my opinion that the nature of the work duties at the Defendant National Railroad Passenger Corporation was such that it was reasonably foreseeable that Judy Zarecki, could sustain Bilateral Carpal Tunnel Syndrome in her hands or wrist or sustain some other hand/wrist injury.

9. I make this affidavit upon my personal and professional knowledge and upon my examination of Judy Zarecki, the medical records of Judy Zarecki, and, if sworn as a witness, I can and will testify competently to the facts hereinbefore stated.

(Farrell Aff.). It is fair to say that Farrell's affidavit is the only evidence presented by Zarecki in support of her opposition to summary judgment.

Amtrak moves for summary judgment contending that there is no genuine issue of

---

**3.** There is some indication in the record that Zarecki hired Daniel L. Welch, also an ergonomist, to inspect her worksite. Apparently, however, Zarecki has decided not to rely on Welch's findings or conclusions. She has not provided the Court with any of Welch's conclusions, has not designated Welch as an expert in this case, and has not offered Welch's affidavit in opposition to Amtrak's motion.

material fact as to each element of the plaintiff's negligence action.

## ANALYSIS

### Summary Judgment Standard

 Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip Side Productions, Inc. v. Jam Productions, Ltd.,* 843 F.2d 1024, 1032 (7th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). In determining whether a genuine issue exists, the court "must view the evidence presented through the prism of the substantive evidentiary burden." *Liberty Lobby,* 477 U.S. at 254, 106 S.Ct. at 2513. In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Finally, we note that mere conclusory assertions, unsupported by specific facts, made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a proper motion for summary judgment. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985) ("Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact"); *see also Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1057 (7th Cir.1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.") (internal quotation marks omitted).

### Zarecki's Negligence Claim

 Under FELA, railroad companies are liable in damages to any employee who suffers injury due to the railroad's negligence. 45 U.S.C. § 51. To recover under FELA, Zarecki must prove the common-law elements of negligence including duty, breach, foreseeability, and causation. *Fulk v. Illinois Cent. R.R. Co.,* 22 F.3d 120, 124 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). The evidence required to establish liability in a FELA action however is less than that required in an ordinary negligence action. *Harbin v. Burlington N. Ry. Co.,* 921 F.2d 129, 131–132 (7th Cir.1990). The common law standard of proximate cause is not applicable to FELA. *Crane v. Cedar Rapids & Iowa City R.R. Co.,* 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969). The Supreme Court has described the test for causation as "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

 Under FELA, a railroad has a duty to provide employees: (1) a reasonably safe workplace; (2) safe equipment; (3) proper training; and (4) suitable methods to perform the assigned work. *Aparicio v. Norfolk & W. Ry. Co.,* 874 F.Supp. 154, 158 (N.D.Ohio 1994). Whether the duty has been breached is viewed from an objective standard of reasonableness. The standard is the degree of care a person of ordinary, reasonable prudence would observe under

similar circumstances. The scope of the railroad's duty, however, is limited to hazards it could have foreseen. *Gallose v. Long Island R. Co.*, 878 F.2d 80, 85 (2d Cir.1989).

■ In order for Zarecki to prove that Amtrak breached its duty, she must offer evidence that shows (or, for purposes of the present motion, raises a genuine issue of material fact as to) either that the equipment she was provided, or the manner in which she was required to use it, was unsafe. Zarecki maintains that the keyboard and the chair she used while working were unsafe, but she provides no evidentiary support for this contention. The only evidence she provides is her own testimony that Amtrak did not provide her with an adjustable keyboard or a chair without armrests at all times; however, she offers no evidence that using a non-adjustable keyboard or a chair with armrests was unsafe or otherwise causally related to her carpal tunnel syndrome. (Zarecki Dep. at 104–06).

Zarecki also maintains that the manner in which Amtrak required her to perform her job was unsafe; again however, she fails to provide any probative evidence to support this contention. Her evidence consists only of her testimony that her job requires her to handle approximately 95–150 calls per day and to enter data continuously using a computer keyboard. (Zarecki Dep. at 71). Additionally, she testified that she is allowed to take two scheduled breaks along with other breaks to use the washroom, coffee machine, and water fountain. Amtrak is correct in asserting that this testimony is only a description of her job and not evidence that she is required to perform her job in an unsafe manner. Absent any additional evidence suggesting that these work conditions exceed some minimal safety threshold, Zarecki's testimony, even when viewed in the light most favorable to her, fails to raise a genuine issue of material fact as to the safety (or lack thereof) of her working conditions.

Essentially, this Court has concluded that Zarecki's claims survive or fall on the basis of the Court's evaluation of Dr. Farrell's affidavit. Zarecki attempts to use Dr. Farrell's affidavit to prove that the keyboard, chair, and manner in which she was required to use

them were unsafe and that they caused her injury.

The first issue that this Court must address is whether Dr. Farrell's affidavit is admissible. Amtrak challenges the admissibility of Dr. Farrell's affidavit on several grounds: (1) that Dr. Farrell's affidavit does not meet the expert witness requirements under Rule 702 of Federal Rules of Evidence as further amplified by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); and (2) that Dr. Farrell's affidavit violates Rule 56(e) of the Federal Rules of Civil Procedure. Additionally, this Court *sua sponte* directed the parties to address whether Dr. Farrell was properly disclosed as an expert pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and as directed by this Court's order dated April 28, 1995 regarding expert disclosure. Based on each of these considerations, the Court concludes that Dr. Farrell's affidavit is inadmissible and may not properly be considered.

On April 28, 1995, the Court ordered both parties to comply with Rule 26(a) by July 28, 1995. Rule 26(a)(2) requires parties to disclose the identity of any person who may be used at trial as an expert witness. FED. R.CIV.P. 26(a)(2)(A). The disclosure must be accompanied by a written report prepared and signed by the witness that contains: (1) a complete statement of all opinions to be expressed and the basis for the opinions; (2) the data or other information considered by the witness in forming the opinions; (3) any exhibits to be used as a summary of or in support for the opinions; (4) the witness' qualifications and compensation; and (5) any other cases in which the witness has testified as an expert within the preceding four years. FED.R.CIV.P. 26(a)(2)(B). The Rule also requires that "These disclosures be made at the times and in the sequence directed by the court." FED.R.CIV.P. 26(a)(2)(C). The requirement of a written report in FED.R.CIV.P. 26(a)(2)(B) applies only to those experts who are retained or specially employed to provide expert testimony. *See* FED.R.CIV.P. 26 advisory committee notes (1993). Zarecki did not disclose Dr. Farrell as an expert witness

pursuant to Rule 26(a). She contends, however, that she need not have disclosed Dr. Farrell as an expert because he is her treating physician and his testimony pertains to information obtained during the course of his treatment of her and not obtained in preparation for trial. The Court cannot agree.

 Zarecki is correct, of course, in asserting that under certain circumstances a treating physician need not be disclosed as an expert. *See generally Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 218 (7th Cir.1994). In particular, as the Seventh Circuit observed in *Patel v. Gayes*, 984 F.2d 214 (7th Cir.1993), where a witness will testify as to information acquired not "in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit," that witness need not be disclosed as an expert. *Id.* at 217. Thus, "[r]ule 26 focuses not on the status of the witness but rather on the substance of the testimony." *Id.* at 218. In a related vein, in *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir.1994), the Seventh Circuit rejected a plaintiff's argument that his treating physician was exempt from the Federal Rules of Evidence governing expert testimony, stating "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation." *Id.* at 1105 n. 14. In the instant case, the Court has little difficulty concluding that Dr. Farrell is being offered as an expert who should have been disclosed pursuant to Rule 26(a)(2) and this Court's expert-disclosure order. In the first place it is instructive to note that Dr. Farrell's affidavit states, "I have been retained as an *expert* witness." (Farrell Aff. ¶ 1.). Of course, we are not slaves to labels and so we look to the substance of Dr. Farrell's testimony. Dr. Farrell's testimony goes far beyond any personal observations that he might have made during the course of treating Zarecki; instead, he purports to offer conclusions as to the ultimate cause of Zarecki's carpal tunnel syndrome (*see id.* ¶ 7) and the foreseeability of Zarecki's injuries based on the work conditions at Amtrack (*id.* ¶ 8). Dr. Farrell also states that he makes his affidavit "on personal *and professional*

knowledge *and* upon my personal examination of Judy Zarecki, and the medical records of Judy Zarecki." (*Id.* ¶ 9) (emphasis added). Plainly, Dr. Farrell's opinions as to ultimate causation and foreseeability are not derived solely from his treatment of Zarecki or his personal observations—there is, for instance no suggestion in the record that he ever actually investigated the specific nature of Zarecki's work conditions; instead, he is purporting to speak as an expert on these issues based on some unspecified body of professional knowledge. Accordingly, he should have been disclosed pursuant to Rule 26(a)(2). In view of Zarecki's failure to comply with the disclosure requirements of Rule 26(a)(2), it is within this Court's sound discretion to strike Dr. Farrell's affidavit. *Patel v. Gayes*, 984 F.2d at 217; *see also Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995) (finding no abuse of discretion in excluding expert testimony that was not properly disclosed). However, our decision to strike Dr. Farrell's testimony is not based on this ground alone.

 Because we conclude that Dr. Farrell's testimony is being offered as expert testimony, we also look to Rule 702 of the Federal Rules of Evidence—and the Supreme Court's treatment of that Rule in *Daubert*—to determine its admissibility. Under *Daubert*, this Court must conduct a two-step analysis to determine whether an expert's opinion is admissible. First, the court must determine "whether the expert's testimony pertains to scientific knowledge. This task requires that the district court consider whether the testimony has been subjected to scientific method; it must rule out 'subjective belief or unsupported speculation.'" *Porter v. Whitehall Lab.*, 9 F.3d 607, 614 (7th Cir.1993) (quoting *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2795). Second, the district court has to "*determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue.* That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying." *Id.* at 616. In *Daubert*, the Court identified several factors that should be considered when determining whether testimony has been subject-

ed to the scientific method: (1) whether the theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique; and (4) whether the theory has been generally accepted by the relevant scientific community. *Daubert,* 509 U.S. at ——— ———, 113 S.Ct. at 2796–97. The Court's conclusion must be based solely on the principles and methodology underlying the expert's conclusion, not the conclusion itself. *Id.* at ———, 113 S.Ct. at 2797. Of these four factors, the first—whether the proffered theory has been tested—has been deemed the most important. *See, e.g., Stanczyk v. Black & Decker, Inc.,* 836 F.Supp. 565, 567 (N.D.Ill.1993); *Schmaltz v. Norfolk & W. Ry. Co.,* 878 F.Supp. 1119, 1121 (N.D.Ill.1995).

Dr. Farrell's affidavit, which seeks to invoke professional or scientific knowledge, fails the first part of the test because his opinion is not based on any discernable scientific methodology. On the present record, Dr. Farrell's conclusions can only be characterized as his own subjective beliefs as to the cause of Zarecki's carpal tunnel syndrome. None of the *Daubert* factors support the notion that Dr. Farrell's opinion constitutes scientific knowledge. The record fails to indicate whether Dr. Farrell has conducted any studies or analyses to substantiate his views. Dr. Farrell does not allude to any authorities that support his views, nor has he attempted to demonstrate that his views have gained general acceptance in the scientific community. Instead, Dr. Farrell's conclusions are based simply on his own observations, which are insufficient in this case to establish that his views are corroborated by the scientific method. *See O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1106–07 (7th Cir.1994) (holding that a physician's expert opinion testimony that he could tell whether a particular cataract was caused by radiation just by looking at it was inadmissible because no evidence was offered to prove that radiation-induced cataracts could be identified by mere observation); *Deimer v. Cincinnati Sub–Zero Products, Inc.,* 58 F.3d 341 (7th Cir.1995) (affirming district court's exclusion of doctor's testimony regarding causation because the doctor did not conduct

any studies or analysis to substantiate his opinion or provide any supporting methodology or protocol); *Stanczyk,* 836 F.Supp. at 567–68; *Schmaltz,* 878 F.Supp. at 1121–24. Accordingly, we find that Dr. Farrell's testimony does not amount to "scientific knowledge" and is inadmissible as expert testimony on the issue of causation. Additionally, Dr. Farrell's opinion as to the foreseeability of Zarecki's injuries to Amtrak is so devoid of any foundation as to warrant discussion.

Even if Dr. Farrell's affidavit fully satisfied the *Daubert* standards and Rule 26, there is yet another fundamental deficiency with the affidavit. Dr. Farrell's affidavit fails to comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e) requires experts to set forth facts and explain the reasoning they used in reaching their conclusions rather than simply providing naked conclusions. In *Mid–State Fertilizer Co. v. Exchange National Bank of Chicago,* 877 F.2d 1333 (7th Cir.1989), Judge Easterbrook, writing for the court, explained: "Rule 56(e) of the Rules of Civil Procedure provides that affidavits supporting and opposing motions for summary judgment must do more than present something that will be admissible in evidence. They shall 'set forth facts' and by implication in the case of experts (who are not 'fact witnesses') a process of reasoning beginning with a firm foundation." *Id.* at 1339. Although the evidence required to establish causation in a FELA action is less than that required in an ordinary negligence action, the plaintiff must still make some showing that a causal relation existed. *Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). Dr. Farrell's affidavit is inadequate to raise a genuine issue as to causation. An affidavit that does not set forth the facts and reasoning used in making a conclusion amounts to nothing more than a denial of the adverse party's pleading. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid State Fertilizer,* 877 F.2d at 1339. Dr. Farrell's affidavit does just that— gives a bottom line opinion, but provides no explanation of the facts or reasoning used in formulating that opinion. He merely states

that his conclusion is based on his examination of Zarecki, her medical records, and his professional experience. The Court is left in dark as to what facts he derived from Zarecki's examination and medical records, or the reasoning used to conclude that Zarecki's work duties caused her injury. Accordingly, Dr. Farrell's affidavit does not satisfy the requirements of Rule 56(e) and hence the affidavit is inadmissible on this additional ground.

Moreover, Dr. Farrell's affidavit, even if deemed admissible, does not indicate that Zarecki's equipment or her manner of using that equipment was unsafe; rather, he only claims that her condition was caused by her job activities. Zarecki attempts to use this affidavit to prove that Amtrak somehow breached its duty, but causation does not equal breach, they are separate elements each of which must be proven.[4]

Zarecki has also failed to produce any evidence to show that Amtrak knew or should have known that an unsafe condition existed. Dr. Farrell testified that due to the nature of Zarecki's work, it was reasonably foreseeable that she would develop carpal tunnel syndrome. However, because Dr. Farrell is not qualified to give an expert opinion as to whether Amtrak should have foreseen that an injury would develop, his testimony is insufficient to raise a genuine issue as to foreseeability. Absent foreseeability, there can be no duty to warn. Finally, Zarecki seeks to rely on her testimony that she complained to Amtrak personnel; however, she admitted she did not complain to any Amtrak *supervisory* personnel *prior* to being diagnosed with carpal tunnel syndrome.[5] Zarecki's complaints *after* being diagnosed with carpal tunnel syndrome are insufficient to prove that Amtrak knew about any unsafe conditions prior to her development of the condition.

Given the scant evidence offered by the Plaintiff, this Court cannot conclude that an issue of material fact exists as to causation or as to whether Amtrak knew, or should have foreseen, that an unsafe condition existed—even when viewing the evidence in a light most favorable to Zarecki.

## CONCLUSION

Ms. Zarecki's present medical conditions are unfortunate. However, the law does not provide a remedy for every medical malady. Under the circumstances of this case, Ms. Zarecki has simply not presented enough evidence to proceed to trial. In essence, a trial will only delay the inevitable conclusion of this case—a judgment in favor of Amtrak. For all of the foregoing reasons, defendant Amtrak's motion for summary judgment is granted. This case is dismissed with prejudice. Both sides are to bear their own costs.

---

**4.** Although the Plaintiff did not argue in response to Defendant's motion for summary judgment that the doctrine of res ipsa loquitur applies, there is some indication that she may be relying on that doctrine to establish the equipment provided was unsafe. Res ipsa loquitur only applies if the plaintiff can demonstrate that the accident was one that does not ordinarily occur absent negligence, and that the injuring instrumentality was in the exclusive control of the defendant. *Newell v. Westinghouse Electric Corp.*, 36 F.3d

576, 579 (7th Cir.1994). Res ipsa loquitur is inapplicable to this case because this Court cannot conclude that carpal tunnel syndrome is not the type of injury that ordinarily does not occur absent negligence or that Amtrak had exclusive control over Zarecki's equipment.

**5.** Zarecki did not complain to any supervisor until 1994; her symptoms first appeared in March of 1992. Zarecki Dep. at 55, 116.