**Lynda J. TOOTLE, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Defendant.**

**No. CV 509–031.**

United States District Court, S.D. Georgia, Waycross Division.

Sept. 3, 2010.

Gary F. Easom, Cook, Hall & Lampros, LLP, Ponte Vedra Beach, FL, for Plaintiff.

Andrew J. Knight, II, Moseley, Prichard, Parrish, Knight & Jones, Jacksonville, FL, for Defendant.

Thomas J. Joyce, III, Law Firm of Thomas J. Joyce, III, Mt. Laurel, NJ.

## ORDER

LISA GODBEY WOOD, Chief Judge.

Plaintiff Lynda J. Tootle brought this action against Defendant CSX Transportation, Inc. ("CSX") pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et*

*seq.*, the former Federal Safety Appliance Act, 45 U.S.C. §§ 1–16 (repealed 1994), and the former Boiler Inspection Act, 45 U.S.C. §§ 22–34 (repealed 1994). Presently before this Court is CSX's Motion for Summary Judgment on all of Plaintiff's claims against the railroad. (Dkt. No. 48.) For the reasons set forth below, CSX's Motion is **GRANTED.** (Dkt. No. 48.)

## I. BACKGROUND

Plaintiff was employed from 1991 to 2008 as a utility worker at CSX's Rice Yard location in Waycross, Georgia. Plaintiff performed a variety of support and cleaning activities in her position as a utility worker, including servicing and cleaning locomotives, throwing track switches, cleaning and sweeping restrooms and break areas, and transporting materials and cleaning supplies between work areas and storage sites. Some of these duties necessarily involved lifting or pulling heavy objects. For example, Plaintiff typically carried six-to seven-pound boxes of cleaning supplies a distance of approximately five feet about two or three times each shift. (Tootle Dep. 35–36.) Occasionally, Plaintiff would also be required to carry fifteen or twenty pounds of scrap metal from the tracks to a dumpster. (*Id.* at 37–38.)

As part of her duties, Plaintiff also washed about two or three locomotive engines each day. (*Id.* at 50.) This task required pulling pressure-washer hoses around and scrubbing the engines with a long scrub brush. Cleaning a single engine could take up to two hours, though Plaintiff typically took breaks while performing this duty. (*Id.* at 53.) Two employees would usually work together to clean the engines, but sometimes Plaintiff would have to complete this task on her own. (*Id.* at 51, 83.) Cleaning the locomotive engines and tracks often required

Plaintiff to use her arms in an overhead position for up to fifteen minutes at a time. (*Id.* at 56.)

In August 1996, Plaintiff consulted Dr. William Dial, an orthopaedic specialist, about increasing pain that she began experiencing in both of her shoulders whenever she performed lifting or pulling movements. Dr. Dial diagnosed Plaintiff with bilateral rotator cuff syndrome. (*See* Dkt. No, 53 Ex. A.) As part of her treatment with Dr. Dial, Plaintiff participated in a physical therapy program for about a year and received a series of Dalalone® and Marcaine® injections in each of her shoulders. She responded well to both the therapy and the injections and in August 1997, Dr. Dial predicted that Plaintiff's shoulder condition would "progressively resolve." (*Id.*)

In early 2002, however, Plaintiff's shoulder pain returned. She had arthroscopic surgery performed on both of her shoulders and returned to work at the Rice Yard in March of 2003. At some point in 2003, attorneys advised Plaintiff for the first time that her recurring shoulder injuries might be work-related. (Tootle Dep. 19.) Plaintiff's shoulder pain returned again in late 2004, and she underwent right shoulder rotator repair cuff surgery in March of 2005. She had another arthroscopic surgery on her right shoulder in 2007 and surgery on her left shoulder in 2009.

On April 15, 2005, Plaintiff filed suit against CSX pursuant to the Federal Employers' Liability Act ("FELA"), as well as the former Federal Safety Appliance Act ("FSAA") and the former Boiler Inspection Act ("BIA"). Plaintiff alleges that she was exposed to excessive and harmful cumulative trauma in her position as a utility worker in CSX's Rice Yard, and that her resulting shoulder injuries were caused in whole or in part by the railroad's negli-

gence. Plaintiff's specific allegations of negligence include CSX's failure to provide her with adequate equipment and assistance to safely perform the duties required of her position, as well as the railroad's failure to warn Plaintiff about the potential dangers of her position through a comprehensive safety or ergonomics program designed to reduce the risk of cumulative-trauma injuries. CSX now moves for summary judgment on the grounds that Plaintiff has not adduced any evidence that the railroad breached its duty under FELA to provide Plaintiff with a reasonably safe working environment. (Dkt. No. 48.) CSX also moves for summary judgment on the grounds that Plaintiff has not shown any violation of the former FSAA, the former BIA, or either of these regulatory statutes' successors. (Dkt. No. 48.)

As explained below. Plaintiff has submitted arguments that, at first blush, seem close to acceptable evidence: her speculation that there might be a lighter hose somewhere, her wishes about having other people perform parts of her job for her, and her quite detailed facts showing that other people who performed other jobs received other injuries to other body parts. But these musings and the statistics about a different injury are not evidence of negligence or foreseeability, not even slightly. Because FELA is not a workers' compensation or strict liability statute, a plaintiff must still provide some such evidence. Because Plaintiff has failed to put forth even slight evidence, summary judgment must be granted in favor of CSX.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. Plaintiff's FELA Claim

■■■ The Federal Employers' Liability Act provides, in relevant part, that: [e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. The Act was passed in "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). Because FELA serves a remedial purpose, it must generally be construed liberally in favor of the employees filing claims under the Act. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct.

2396, 129 L.Ed.2d 427 (1994). At the same time, however, FELA is not a workers' compensation or strict liability statute. *Id.*; *see also Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. 572 (1947) ("[FELA] does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur."). Thus, a railroad worker may not recover simply because he is injured in the course of his employment. Nor may he recover "simply because of conditions encountered as part of [his] job requirements." *Parson v. CSX Transp., Inc.*, 714 F.Supp.2d 839, 843 (N.D.Ohio 2010) (citing *Stevens v. Bangor & Aroostook R.R. Co.*, 97 F.3d 594, 598 (1st Cir.1996)). Rather, to prevail on a claim under FELA, a plaintiff must show that employer negligence played some part in producing the injury for which damages are sought. *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). To withstand summary judgment, a FELA claimant must therefore show the existence of a triable issue of fact as to the traditional common-law elements of negligence, including duty, breach, and causation. *See Van Gorder v. Grank Trunk W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir.2007); *Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir.), *cert. denied,* 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994).

▬ CSX contends that summary judgment is appropriate as to Plaintiff's FELA claim because Plaintiff has not adduced any evidence that the railroad breached its duty to provide her with a reasonably safe working environment. There is no question that FELA imposes a duty on railroads to provide their employees with a reasonably safe place to work. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 558, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). A railroad's duty to

maintain a safe workplace does not mean, however, that all workplace dangers must be eliminated; it only requires elimination of those dangers "that can reasonably be avoided in light of the normal requirements of the job." *Stevens,* 97 F.3d at 598. A railroad breaches its duty to provide a safe workplace if it "knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees." *Ulfik v. Metro–North Commuter R.R.,* 77 F.3d 54, 58 (2d Cir.1996); *see also Van Gorder,* 509 F.3d at 269 ("[A] railroad breaches its duty when it knew or by the exercise of due care should have known that prevalent standards of conduct were inadequate to protect the plaintiff and similarly situated employees." (internal brackets and quotation marks omitted)). The scope of a railroad's duty is therefore limited to those workplace hazards that the railroad could have reasonably foreseen. *See Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) ("[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence.").

Here, there is no evidence from which a jury could infer that CSX breached its duty to provide Plaintiff with a reasonably safe workplace because there is no evidence that CSX knew, or should have known, that Plaintiff faced an unreasonable risk of recurring shoulder injuries in her position as a utility worker. Plaintiff argues that her testimony as to the physically demanding nature of her job is enough to create a triable issue of fact as to CSX's alleged negligence. However, Plaintiff cannot recover by simply showing that her injury is in some way related to her job. *Ellis,* 329 U.S. at 653, 67 S.Ct. 598. Nor may she recover by showing that she was sometimes required, in her position as a railroad utility worker, to

carry boxes of cleaning supplies or use her arms in an overhead position while pressure-washing locomotive engines. *See Stevens,* 97 F.3d at 598 (noting that railroad's duty to eliminate workplace dangers only extends to those dangers "that can be reasonably avoided in light of the normal requirements of the job"). Plaintiff must produce some evidence that CSX either knew, or should have known, that the manner in which Plaintiff was required to do her job created an unreasonable risk of injury. Plaintiff's testimony as to the physical demands of her position is "only a description of her job and is not evidence that she [was] required to perform her job in an unsafe manner." *Zarecki v. Nat'l R.R. Passenger Corp.,* 914 F.Supp. 1566, 1572 (N.D.Ill.1996).

Plaintiff also argues that her deposition testimony provides evidence of negligence under FELA. In particular. Plaintiff deposed that she was occasionally required to clean locomotives by herself (Tootle Dep. 84–85) and, when pressed, that she believed a lighter hose might have lessened the shoulder stress she experienced when pressure-washing engines:

Q. For all the jobs we've talked about that you claim put some stress on your shoulders, what additional or different equipment do you believe CSX should have provided you to lessen that stress?

A. Well, they have the switches now, they're better than what they used to be. The wash rack is really rough on it. I don't know what they could have done, you know, for those hoses, having to pull on those heavy hoses, but . . .

Q. So you don't—can you think of anything they could have done to modify or give you different equipment in the wash rack job?

A. A lighter hose.

Q. A lighter hose?

A. Uh-huh. Yes.

Q. Anything else?

A. Nothing I can think of right now.

(*Id.* At 81–82.) However, Plaintiff offers no evidence that cleaning engines without assistance or using a certain hose is dangerous or unsafe. Plaintiff's testimony that her injuries may have been avoided had CSX used lighter equipment or employed more personnel to help her do her job is mere speculation. *See Moore v. Chesapeake & Ohio Ry. Co.,* 340 U.S. 573, 578, 71 S.Ct. 428, 95 L.Ed. 547 (1951) ("Speculation cannot supply the place of proof."). Completely absent from the proof submitted is any evidence that a lighter hose exists. And even pretending that a lighter hose had been brought forth, there is no evidence that such a hose would be adequate for the relevant task. Moreover, the proper inquiry under FELA is "whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task." *McKennon v. CSX Transp., Inc.,* 897 F.Supp. 1024, 1027 (M.D.Tenn.1995); *see also Darrough v. CSX Transp., Inc.,* 321 F.3d 674, 676 (7th Cir.2003) ("The question is whether the railroad exercised reasonable care in creating a reasonably safe working environment, not whether that working environment could have been safer."). Plaintiff's speculative deposition testimony is therefore insufficient to raise an inference that CSX knew or should have known of a potential hazard in the workplace.

Plaintiff also presents the deposition testimony of several CSX corporate employees regarding an increasing number of carpal tunnel injury claims filed with the railroad. (*See* Dkt. No. 53 Exs. H–J.) Plaintiff argues that this testimony provides evidence that the railroad had notice of a rising number of "cumulative-trauma" injuries among its employees, yet failed to

implement a comprehensive safety program to prevent or reduce the risk of these types of injuries. Evidence regarding CSX's alleged notice of company-wide carpal tunnel claims, however, is insufficient to create a triable issue of fact as to whether the railroad knew or should have known that Plaintiff and other similarly situated utility workers faced an unreasonable risk of developing bilateral rotator cuff injuries in performing the duties required in Plaintiff's position. The testimony of the corporate witnesses does not address Plaintiff's particular injury, position, or workplace. Testimony that does not have some link to Plaintiff's specific job is "far too general to permit a jury to conclude that [Plaintiff's] particular workplace was unsafe." *Doty v. Ill. Cent. R.R. Co.*, 162 F.3d 460, 462–63 (7th Cir.1998). There is simply no evidence in the record that other workers in Plaintiff's particular position experienced rotator cuff injuries due to unsafe or dangerous working conditions.

Moreover, there is no evidence that CSX could have foreseen that Plaintiff's particular position could have been made any safer through the implementation of a comprehensive safety program aimed at preventing cumulative-trauma injuries like carpal tunnel syndrome, which may be traceable to repetitive-motion tasks. Although Plaintiff deposed that her position required "constant[ ]" work "all day long" (Tootle Dep. 75, 77), Plaintiff also deposed that she did not perform any particular task more than a few times each day. (*See id.* at 25 (climbed onto forklift "[m]aybe three or four times" each shift); *id.* at 36 (moved cleaning supplies "[m]aybe two or three times" each shift); *id.* at 45 (threw switches "five or six

times" each shift); *id.* at 50 (washed "two or three" engines during a typical shift).) Further, Plaintiff deposed that she was permitted to work at her own pace when performing tasks such as sweeping and cleaning engines, and that she was never disciplined or criticized for taking breaks when performing these tasks. (*Id.* at 39–40, 53.) This evidence is undisputed. As Plaintiff herself describes it, the "repetitious" nature of her particular work activities does not amount to the type of repetitive motion generally associated with the risk of developing a cumulative-trauma injury like carpal tunnel syndrome. (*Id.* at 74.) The undisputed evidence is that Plaintiff does not have carpal tunnel syndrome, did not perform similar jobs to those who do have carpal tunnel syndrome, and her "repeated" actions were taken at her own pace.

Plaintiff has not produced any evidence from which a jury could infer that CSX breached its duty to provide her with a reasonably safe working environment. Although Plaintiff's injuries are unfortunate, "the law does not provide a remedy for every medical malady." *Zarecki,* 914 F.Supp. at 1575; *see also Sieczka v. Canadian Pac. Ry. Sys.,* No. 07–CV–1849, 2008 WL 4369389, at *6 (N.D.Ill. Sept. 23, 2008) ("FELA never has been, and still is not today, 'an insurance statute.'").

The Court is well aware of the language in *Rogers* that states that the test of a jury case under FELA is "whether the proofs justify with reason the conclusion that employer [sic] negligence played any part, even the slightest, in producing the injury … for which damages are sought." 352 U.S. at 506, 77 S.Ct. 443. But even under that "lowered" standard,[1] a plaintiff must

---

**1.** Some opinions take issue with the contention that the causation standard is altered in FELA cases. *See, e.g., Norfolk S. Ry. Co. v.*

*Sorrell,* 549 U.S. 158, 173, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) (Souter, J., concurring) ("Despite some courts' views to the contrary,

still produce some evidence of negligence. Under a "slight" standard or otherwise, summary judgment is appropriate in a case such as this where no proof of negligence exists.

Trial judges must avoid the temptation to abdicate their duty to rule faithfully on summary judgment motions. Even in cases where "reasonableness" is the standard, there must still be evidence that the defendant was unreasonable. When there is no actual evidence of foreseeability and no actual evidence of negligence, a judge must rule accordingly. As noted above, an unexamined view of some of Plaintiff's arguments might initially give the impression of being evidence of negligence or something close to it. In such a case, where evidence almost exists, a judge may be tempted to surrender his or her duty to a jury. "This is exactly what should not happen. It tempts a judge to put aside his responsibility and let the jury decide whether there is any evidence in support. A party needs some evidence of negligence to get to the jury." *Borum v. Grand Trunk W. R.R., Inc.*, 659 F.Supp.2d 853, 858 (E.D.Mich.2009).

Here, there is no evidence of negligence or foreseeability. Plaintiff has put forth evidence that she has a shoulder injury, and that her shoulder injury is arguably work-related. But no evidence of employer *negligence*—even slight or minimal—was presented. Her evidence indicating that CSX knows of employers who sustained a different injury (carpal tunnel syndrome) to a different body part is voluminous yet irrelevant. Equally unavailing is her observation that hiring additional

people to do part of her job for her or securing hoses that might be lighter could have made her job easier. Plaintiff essentially asks the Court to pretend that FELA is a workers' compensation or strict liability statute such that whenever an injury is arguably work-related, the case goes to the jury. But to get to the jury, a FELA claimant must still show the existence of a genuine issue of fact as to the traditional common-law elements of negligence. *See Van Gorder*, 509 F.3d at 269. Because Plaintiff failed to provide any evidence that CSX knew or should have known that her particular job was unsafe in light of the normal requirements of that position, Plaintiff cannot show that employer negligence existed or played any part in her injury. *See Stevens*, 97 F.3d at 598. Accordingly, CSX is entitled to summary judgment on Plaintiff's FELA claim.

**B. Plaintiff's FSAA and BIA Claims**

■ CSX is also entitled to summary judgment on Plaintiff's claims under the former FSAA and the former BIA. As a preliminary matter, the Court notes that these statutes, as cited in Plaintiff's Complaint, were both repealed and recodified in 1994. The Safety Appliance Act ("SAA") can now be found at 49 U.S.C. § 20301 *et seq.*, and the Boiler Inspection Act has been recodified as the Locomotive Inspection Act ("LIA") at 49 U.S.C. § 20701 *et seq.*

■■ The SAA and the LIA impose absolute and continuing duties on railroads to maintain certain equipment in a safe and working condition. *See Kurns v.*

*Rogers* did not address, much less alter, existing law governing the degree of causation necessary for redressing negligence as the cause of negligently inflicted harm; the case merely instructed courts how to proceed when there are multiple cognizable causes of an injury."); *Raab v. Utah Ry. Co.*, 221 P.3d

219, 227–31 (Utah 2009) (holding that *Rogers* did not alter common-law proximate cause as the correct standard of causation under FELA). Such a controversy is irrelevant in a case such as this where no evidence of negligence exists.

*Chesterton,* No. 08–2216, 2009 WL 249769, at *2 (E.D.Pa. Feb. 3, 2009) (citing *Urie v. Thompson,* 337 U.S. 163, 182 n. 20, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)). The SAA sets out the general requirements that a vehicle must meet before a railroad carrier may use that vehicle on any of its railroad lines. 49 U.S.C. § 20302. The LIA requires railroads to maintain locomotives so that they are "in proper condition and safe to operate without unnecessary danger of personal injury." *Id.* § 20701. To recover for a violation of either the SAA or the LIA, a plaintiff must show that the railroad maintained equipment covered under the statute in a defective or unsafe condition, and that the plaintiff suffered injuries resulting in whole or in part from the statutory violation. *Richards v. Consol. Rail Corp.,* 330 F.3d 428, 432 (6th Cir.2003); *Withrow v. CSX Transp., Inc.,* No. 1:07cv418, 2008 WL 5101150, at *2 (S.D.Ohio Nov. 28, 2008).

CSX argues that it is entitled to summary judgment on Plaintiff's SAA and LIA claims because Plaintiff has produced no evidence of any defect in any railroad equipment covered under the statutes. In fact, Plaintiff does not even allege any defects in equipment covered under the statutes. Because there is no indication or allegation that CSX violated either the SAA or the LIA, aside from Plaintiff's bare assertion that her suit is brought pursuant to prior versions of these statutes (Compl. ¶ 3), CSX is entitled to summary judgment on Plaintiff's SAA and LIA claims.

## IV. CONCLUSION

Plaintiff has presented no evidence that CSX breached its duty under FELA to provide her with a reasonably safe working environment, or that CSX maintained any defective equipment in violation of either the SAA or the LIA. Accordingly, CSX's Motion for Summary Judgment on Plaintiff's claims is **GRANTED.** (Dkt. No. 48.)