*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0236p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

ROBERT BORGER, SR.; DERRICK J. ATKINSON,
     *Plaintiffs-Appellants,*

     *v.*

No. 08-3685

CSX TRANSPORTATION, INC.,
     *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00019—Sandra S. Beckwith, District Judge.

Argued: May 1, 2009

Decided and Filed: July 8, 2009

Before: MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Martin J. Holmes, Jr., SHINDLER, NEFF, HOLMES, SCHLAGETER & MOHLER, Toledo, Ohio, for Appellants. Dan Himmelfarb, MAYER BROWN LLP, Washington, D.C., for Appellee. **ON BRIEF:** E.J. Leizerman, Michael Jay Leizerman, E.J. LEIZERMAN & ASSOCIATES, LLC, Toledo Ohio, for Appellants. Dan Himmelfarb, Evan Mark Tager, MAYER BROWN LLP, Washington, D.C., James L. O'Connell, James F. Brockman, David E. Williamson, LINDHORST & DREIDAME, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

     BOYCE F. MARTIN, JR., Circuit Judge. Railworkers Robert Borger and Derrick Atkinson sued CSX Transportation under the Federal Employers Liability Act, alleging injuries from exposure to hydrochloric acid fumes. For the reasons described below, we AFFIRM the district court's entry of summary judgment in CSX's favor.

1

I.

On June 21, 2004, Robert Borger, Sr. and Derrick J. Atkinson worked together as engineer and conductor on a CSX train heading south from Troy, Ohio to Cincinnati. A northbound CSX train from Cincinnati needed to pass on the same track, so Borger stopped his train in a siding—a section of track parallel to the main track. As the other train passed, Borger remained onboard, while Atkinson stepped off. Borger says that while the northbound train was passing, he smelled an "immediate sharp, strong smell . . . like somebody taking a fire extinguisher and blasting it in [his] face." From where he stood, Atkinson also smelled a "very, very strong smell." Borger's eyes were irritated and he experienced a "strong acidy taste going down [his] throat" as well as headaches and coughing. Atkinson experienced similar symptoms; both men received medical treatment.

Before the northbound train left Cincinnati earlier that evening, a two-man CSX crew had conducted a brake inspection which included a visual inspection of the train's cars. The crew reported no leaks or unusual smells. Three crew members aboard the northbound train said in affidavits that, before they passed Borger and Atkinson, they were "not aware of any odor coming from our train" and "had no knowledge . . . that there was any leak or emission or discharge from any of the cars." One of the crew stated that he had "briefly noticed a skunk-like odor . . . which he did not believe came from any of the cars of our train." Another crew member had smelled an "unusual odor, but did not believe that it was coming from our train," and the third crew member "smelled an usual odor, but believed that it had come from the Miller Brewery, not our train."

After the train passed, Borger reported the odor to a dispatcher and the northbound train stopped for the crew to inspect it. The crew did not detect any leaks or unsecured valves or hatches, but they did smell a faint odor coming from one of the tank cars that was carrying hydrochloric acid. Later that night, the trainmaster inspected the northbound train and also did not discover any leaks. And at a later stop in Walbridge, Ohio, yet another CSX worker inspected the train and, again, found no leaks.

Borger and Atkinson filed separate lawsuits against CSX under the Federal Employers Liability Act, 45 U.S.C. § 51, for injuries that allegedly resulted from exposure to hydrochloric acid vapors emanating from the northbound train. The district court

consolidated their cases and granted CSX's motion for summary judgment, determining that no genuine issue of material fact existed as to whether CSX violated federal safety regulations and that the release of hydrochloric acid vapor was not foreseeable and thus was not the result of CSX's negligence. The plaintiffs appeal.

## II.

This Court reviews de novo a district court's grant of summary judgment. *Mohnkern v. Prof'l Ins. Co.*, 542 F.3d 157, 160 (6th Cir. 2008), and makes all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

The Federal Employers Liability Act provides a federal cause of action against a railroad company for employees injured as a result of their employer's negligence:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

42 U.S.C. § 51. Congress enacted the Act in "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 807 (6th Cir. 1996) (citation omitted), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000). The Act requires a railroad company to provide its workers with a "reasonably safe place in which to work and such protection [against the hazard causing the injury] as would be expected of a person in the exercise of ordinary care under the circumstances." *Aparicio*, 84 F.3d at 810 (quoting *Urie v. Thompson*, 337 U.S. 163, 174 (1949)).

A plaintiff may demonstrate liability as a matter of law if he proves that a railroad company violated a safety statute that establishes an absolute duty on the railroad company. *See Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969); *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 443 (1958); *Urie*, 337 U.S. at 163. If a plaintiff cannot point

to a specific safety statute that the railroad violated, he can still prevail by proving the "traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990).

A.

The plaintiffs argue that CSX violated three federal regulations issued under the Hazardous Materials Transportation Act, 49 U.S.C. § 5101-5128: 49 C.F.R. §§ 173, 173.31, and 174.9. We assume, without deciding, that the Hazardous Materials Transportation Act is among those safety statutes that establishes an absolute duty under the FELA.

*1) Section 173.31*

First, Borger and Atkinson say that CSX violated 49 C.F.R. § 173.31:

d) Examination before shipping.

(1) No person may *offer for transportation* a tank car containing a hazardous material or a residue of a hazardous material unless that person determines that the tank car is in proper condition and safe for transportation.

(emphasis added). Section 173.31 describes a ten-point inspection process, including for example, examination of the "tank shell and heads for abrasion, corrosion, cracks, dents, distortion, defects in welds, or any other condition that makes the tank car unsafe for transportation." 49 C.F.R. § 173.31(d)(1)(i)-(x). But CSX's failure to perform such an inspection does not violate Section 173.31 because the regulation is not directed at carriers, like CSX, but at those who "offer for transportation a tank car." Here, the company that offered the car that contained hydrochloric acid to CSX for transportation was Bayer Corporation. Thus, under Section 173.31(d), it was Bayer's duty, not CSX's, to perform these inspections "before shipping" and CSX's failure to perform them is irrelevant under Section 173.31(d)—a regulation that applies to shippers.

*2) Section 174.9*

The plaintiffs also maintain that CSX violated 49 C.F.R. § 174.9, which addresses the inspection duties for carriers:

> At each location where a hazardous material is accepted for transportation or placed in a train, the carrier shall inspect each rail car containing the hazardous material, at ground level, for required markings, labels, placards, securement of closures and leakage. This inspection may be performed in conjunction with inspections required under parts 215 and 232 of this title.

49 C.F.R. § 174.9. Parts 215 and 232 describe the required pre-departure and brake system inspections.

John Hamm, a CSX car inspector who was on duty the night of the incident, testified about the scope of his inspection of the northbound train. The district court concluded that it satisfied Section 174.9's requirements because "in the course of performing the ground level Class 1 brake inspection of [the northbound train] before departure[,] [Hamm] also looked for signs of leaks on each of the cars and found none." We agree that this was sufficient. Hamm testified in his deposition that he visually observed the valves, ports, discharge pipes, hatches, latches, and other equipment on the tank cars in the course of completing his brake inspection. He also explained that, had he seen anything out of the ordinary, he would have reported it to the lead man and noted it in the Car Inspectors Work Report. The Work Report contains no indication that Hamm observed anything out of the ordinary.

The plaintiffs counter that "Hamm did not properly inspect the tank car on the northbound train prior to it leaving Cincinnati," but they do not explain how Hamm's visual inspection fell short of Section 174.9's requirements. They do not contend that Section 174.9 requires more than a "ground level" inspection for "required markings, labels, placards, securement of closures and leakage," 49 C.F.R. § 174.9. These duties are fewer and less burdensome than those imposed on shippers, *see* 42 C.F.R. § 173.31(d)(1)(i)-(x). Although Hamm testified that he was not trained to inspect tank cars, Borger and Atkinson offer no evidence that a Section 174.9 visual inspection requires special training, beyond the training Hamm completed to become a car inspector. Thus, the district court properly concluded that no facts in the record could support an inference that CSX failed to comply with Section 174.9.

### 3) Section 174.3

Borger and Atkinson also contend that CSX violated 49 C.F.R. § 174.3:

> No person may accept for transportation or transport by rail any shipment of hazardous material that is not in conformance with the requirements of this subchapter.

The Department of Transportation has long interpreted this regulation to entitle carriers to rely on a shipper's certification that the material offered is in accordance with the Hazardous Material Regulations unless it has "reason to know of discrepancies." Hazardous Materials, 63 Fed. Reg. 30,411 (Dep't of Transp. June 4, 1998) (formal interpretation).[1] The regulation therefore requires more than evidence that a person was injured by a shipment: the carrier must have had a reason to know of a problem. The plaintiffs did not, at summary judgment, point to facts supporting a conclusion that CSX violated Section 174.3 because it knew of any discrepancies.

## B.

Finally, Borger and Atkinson contend that even if CSX complied with the Hazardous Materials Transportation Act's requirements, a reasonable fact-finder nevertheless could conclude that CSX was negligent. To support this argument, they point to CSX's decision not to investigate the source of an "unusual odor" that some of the crew members on the northbound train smelled and the nature of CSX's pre-departure inspection of the northbound train.

The district court did not decide if CSX's failure to respond to the "unusual" odors detected by crew members aboard the northbound train amounted to negligence because the plaintiffs never made that argument. Instead, they focused exclusively on the alleged inadequacy and unreasonableness of the pre-departure inspection of the northbound train. An argument not raised before the district court is waived on appeal to this Court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-53 (6th Cir. 2008). But even if it had not been waived, the argument is unconvincing because none of the crew members who reported smelling an odor believed that the odor came from the train.

---

[1]Since the incident, the regulations were amended to allow the carrier to "rely on information provided by the offeror," unless the carrier knows or has reason to know that the information provided by the offeror is incorrect. 49 C.F.R. § 171.2(f).

CSX's decision not to investigate the source of those odors does not amount to negligence.

This leaves us with the plaintiffs' argument that, even if CSX complied with the Hazardous Material Transportation Act regulations, its inspection was nonetheless unreasonable under the circumstances. Liability under the Federal Employers Liability Act may arise "whether the fault is a violation of a statutory duty or the more general duty of acting with care." *Kernan*, 355 U.S. at 438-39. The duty is "measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances," *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 809 (6th Cir. 1985), and is breached if the railroad company knows or should have known that the "prevalent standards of conduct were inadequate to protect" employees. *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 269-70 (6th Cir. 2007). To survive summary judgment, a plaintiff must present "little more than a scintilla" of evidence "given the Supreme Court's view that Congress has favored [the FELA] plaintiffs with a jury resolution of all colorable issues." *Aparicio,* 84 F.3d at 810 (citing *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500 (1957)).

Borger and Atkinson argue that CSX's compliance with the safety regulations is not necessarily conclusive evidence that it acted in a reasonably prudent manner. In support, they rely on *Southern Pacific Transportation Co. v. United States*, 13 Cl. Ct. 402, 411 (Cl. Ct. 1987). In *Southern Pacific* (not an FELA case), the court observed that "[c]ompliance with regulations intended to prevent the harm at issue may in some instances be conclusive evidence of reasonable care, but not where a party *has reason to suspect the existence of special dangers or hazards*." *Id.* at 411 (emphasis added). The court in *Southern Pacific* concluded that the railroad company had notice of facts that "suggest[] some failure on the part of shippers to perform their . . . duties." *Id.* Here, by contrast, Borger and Atkinson did not offer evidence that CSX had notice of any special danger or hazard with respect to the northbound train—for example that CSX was aware of leaks in general, or that it had special information about the car that allegedly leaked hydrochloric acid vapors. Nor did it have any reason to believe that the

shipper, Bayer Corporation, had not performed its inspection duties. Thus, here, CSX's compliance with the Hazardous Materials Regulations is conclusive evidence that CSX exercised due care by conducting a reasonable pre-departure inspection of the northbound train.

Although they deny relying on the doctrine of *res ipsa loquitur* to prove their case, the plaintiffs' claim that CSX violated Section 174.3 is essentially a *res ipsa* claim. It is based on this syllogism: properly prepared cars do not leak when they are being transported; something on the northbound CSX train was leaking as it passed them; thus, the shipment was "not in conformance" with the requirements of the Hazardous Materials Transportation Act.

This Court has applied *res ipsa* in FELA cases, *see Miller v. Cincinnati, N. O. & T. Pac. Ry. Co.*, 317 F.2d 693 (6th Cir. 1963), but we are not convinced that it applies in this case. First, assuming that a leak could be evidence of some person's negligence, it does not follow that it is evidence of CSX's negligence. That a leak might not necessarily result from negligence on the part of the carrier is evident from the structure of the Hazardous Materials Act and Regulations. They describe separate inspection duties for parties "offering" shipments of hazardous materials (shippers) and for parties transporting hazardous materials (carriers). As we described above, Section 173.31(d)(i)-(x) imposes inspection duties on "each person offering a tank car for transportation," while Section 174.9 describes how and when "the carrier must inspect each rail car." The plaintiffs' argument that a leak, no matter when it begins, proves the carrier's negligence ignores the division of regulatory inspection duties. Under the plaintiffs' theory, a carrier is strictly liable regardless of whether it complied with the Section 174.9 inspection duties and performed a reasonably prudent pre-departure inspection.

Notably, Borger and Atkinson do not argue that a reasonably prudent pre-departure inspection required CSX to go beyond the regulations. Nor do they argue that CSX's pre-departure inspection in this case fell below the railroad industry standard. Borger and Atkinson's expert, Joel Robertson, a "Railway Safety Specialist," stated that

CSX "failed to perform an adequate or effective inspection of the tank car each time the tank cars were placed in a train, resulting in the acceptance and transporting of a defective tank car." Even if we assume that the odor plaintiffs smelled came from the tank car carrying hydrochloric acid where CSX workers later detected an odor, we have little information about the odor's possible causes. No one observed leaks or unsecured hatches or latches on the car. As the district court observed:

> The most plausible explanation for the apparent venting of hydrochloric acid vapor, advanced by Plaintiffs' expert, is that [the car] was loaded with insufficient outage, or air space between the top level of the liquid and the top of the tank, for expansion. The outside temperature and hydraulic motion of the train in motion caused the pressure to build inside of the tank car to the point that vapor was vented through the pressure release valve. Alternatively the pressure relief valve was defective to begin with and released vapor into the air at a lower pressure than it should have.

*Borger v. CSX Transp., Inc.*, 2008 WL 1886170, *2 (S.D. Ohio Apr. 25, 2008).

Robertson's report is silent, however, on what type of inspection, in addition to the visual inspection required under Section 174.9, would have been "adequate" or would have revealed the unknown defect in the car that allegedly leaked hydrochloric acid. According to Robertson, the regulations only require the valves on tank cars to be inspected every five years, and it is impossible to inspect the valves without removing them from the tank car. Hamm, who examined the train before it departed Cincinnati, testified that he would have reported any unusual odors, and the absence of any indication of an unusual smell on the pre-departure report is evidence that Hamm did not smell anything coming from the cars. And the plaintiffs offered no evidence that the vapors could not have been released absent a visible leak in the tank of the car. Viewing the facts in Borger and Atkinson's favor, a reasonable fact-finder could not find that CSX's inspection fell below the prevalent standard for railroad companies.

Accepting the plaintiffs' argument that an injury was foreseeable in this case would require future carriers to anticipate an injury every time a train carries hazardous materials—even without notice of a shipment's deficiency or the presence of an unusual odor before a train departs. It would effectively replace the FELA's negligence standard

with strict liability on all carriers of hazardous materials. Even under the "little more than a scintilla" quantum of evidence, no reasonable jury could conclude, based on nothing more than a report of an odor detected on the post-incident inspection, that a reasonably prudent railroad company could have foreseen that the tank car would leak. There is no evidence that the two suspected causes of the alleged leak—insufficient outage or a defective pressure relief valve—could have been detected by a visual inspection. Nor is there evidence that CSX's pre-departure visual inspection of the northbound train fell below the standard of a reasonably prudent railroad inspection or that prescribed by the Hazardous Materials Transportation Act.

IV.

We conclude that CSX did not violate the Hazardous Materials Transportation Act, and that the evidence is not sufficient for a fact-finder to determine that CSX's negligence caused injuries to Borger or Atkinson. We thus AFFIRM the district court's entry of summary judgment.