**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0752n.06

**Case No. 12-4017**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GENE G. GARZA, )
)
    Plaintiff-Appellant, )
)
    v. )
)
NORFOLK SOUTHERN RAILWAY CO., )
)
    Defendant-Appellee. )

**FILED**
Aug 14, 2013
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

**BEFORE:  BATCHELDER, Chief Judge; SUHRHEINRICH and SUTTON, Circuit Judges.**

    **ALICE M. BATCHELDER, Chief Judge.**  Plaintiff Gene Garza worked as an engineer for

defendant Norfolk Southern Railway Company (NS).  This case arises out of a train/automobile

crash that was the primary fault of the automobile driver.  Garza sued his former employer, arguing

NS's partial liability for the accident in four tort claims brought under the Federal Employer's

Liability Act (FELA), which permits recovery from a railroad-employer based on only partial

liability.  NS moved for summary judgment.  The district court granted the motion and held that the

first two claims were precluded by the Federal Railway Safety Act (FRSA), and the last two claims

were precluded by the Locomotive Inspection Act (LIA).  In the alternative, the district court

dismissed all four claims on the merits.  Garza appealed.  Concluding that Garza's claims were

properly dismissed on the merits, we affirm the district court.

**I.**

On August 8, 2006, Gene Garza was operating a NS train going from Toledo to Detroit. The locomotive was running in reverse or "short-hood forward." This meant that the train personnel and their chairs were reversed to face the direction the train was traveling, placing the controls on Garza's right instead of on his left. The district court stated that the designers of the locomotive "intended the engine" to operate "long-hood forward." Garza's own expert, however, acknowledged that the locomotive was designed to travel safely facing either direction.

The accident occurred at the Toledo Street crossing. Earlier that day, there had been another train/automobile accident at Vreeland Road crossing, which was about a third of a mile south of Toledo Street. That accident had been cleared from the tracks by the time Garza's train passed through, but the crossing was still closed, so traffic was diverted to other crossings, allegedly including the crossing at Toledo Street. Garza had not been informed about the earlier accident.

Meanwhile, one David Valade was driving a two-trailer (tandem) dump trunk eastbound on Toledo Street. Well in advance of the crossing and clearly visible to Valade as he approached it, two signs warned of the railroad crossing and of the need to stop at the crossing. And a stop sign was clearly posted before the tracks. The engine's bell and horn warned of Garza's approaching train. Nonetheless, Valade proceeded onto the tracks.

Approaching the crossing, Garza reduced the train's speed from 36 MPH to 28 MPH in compliance with posted notifications of the Federal Rail Administration speed limit for that track. Valade drove onto the track directly in front of the train; Garza later stated that he did not see the truck until it was already on the tracks. Garza immediately engaged the emergency brake and braced

2

for impact. The train hit the truck between its two trailers, pushing it some 676 feet down the track. Garza injured his knee bracing himself against the engine wall in front of his chair, and injured his back and head in the impact.

Garza filed this suit in state court in August of 2009, and NS removed it to federal court. Garza brought four claims under the FELA. First, he alleged that NS was negligent for not issuing a "restricted speed order" after the initial accident at Vreeland Road, the accident that allegedly caused traffic to be redirected to the crossing where this accident occurred. A restricted speed order requires all trains to slow to less than 20 MPH. Second, Garza alleged that NS was negligent because it did not post a flagman at the Toledo Street crossing to direct automobile traffic. Third, Garza alleged that the design of the locomotive cab was faulty because when the engine was running in reverse, the design slowed Garza's ability to engage the brakes. Fourth, Garza alleged that the design of the locomotive cab was faulty because when the engine was running in reverse, the metal "alerter box" was directly behind the engineer's head, and the engineer's seat had no headrest.

The district court granted NS's motion for summary judgment on all four claims. The court found that Garza's first two claims were precluded because NS had complied with the safety regulations of another federal statute, the FRSA. The court found that Garza's third and fourth claims were precluded because NS had complied with the LIA. Finally, the district court found in the alternative that Garza had not presented sufficient evidence to support any of his claims. Garza appealed.

We review the district court's grant of summary judgment *de novo. Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A court must grant summary judgment if "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must draw all reasonable inferences in favor of the non-moving party, in this case, in favor of Garza. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case. *See Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007).

## II.

FELA is a 1908 statute that holds railroads liable to their employees for injuries "resulting in whole or in part from the negligence of any of the officers, agents, or employees of" the railroad or "by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. "Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law." *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165-66 (2007).

To make a prima facie showing under FELA, then, a plaintiff must prove the "traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Borger v. CSX Transp., Inc.*, 571 F.3d 559, 563 (6th Cir. 2009) (internal quotation marks omitted). "Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace; this does not mean that a railroad has the duty to eliminate all workplace dangers, but only the duty of exercising reasonable care to that end." *Van Gorder*, 509 F.3d at 269 (internal quotation marks omitted). FELA has a relaxed standard of proximate cause, requiring only that an employer's negligence have

"played any part in causing the injury." *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2641 (2011) (internal quotation marks and edits omitted).

**A.**

Garza first argues that NS negligently failed to issue a "restricted speed order" after the collision at Vreeland Road. A restricted speed order, he says, would have required him to reduce his train's speed to less than 20 MPH, and would have prevented the accident because the truck would have cleared the tracks before the train—traveling at the lower speed—would have reached the crossing.

Garza's expert reported that NS's train dispatcher violated two internal operating rules because the dispatcher failed to "keep informed" about the earlier accident. Garza's expert also cites an internal operating rule defining the actions an engineer should take when a restricted speed order is in effect, such as slowing to under 20 MPH. However, he fails to cite any internal guideline noting *when* a restricted speed order should be put in place and so gives no basis for judging *whether* such an order should have been given.

Garza has not established that NS breached its duty of care. Liability under FELA may arise "whether the fault is a violation of a statutory duty or the more general duty of acting with care." *Borger*, 571 F.3d at 565 (internal quotation marks omitted). Garza presents no evidence that a restricted speed order was required by law in this situation. The train's speed as it approached the crossing was only 28 MPH. That speed complied with the posted notifications of the Federal Rail Administration speed limit for the track. Nor has Garza presented any evidence that issuing such

a restricted speed order is common industry practice, or even that issuing such an order was required by NS's internal policies. Garza must present evidence of such a violation in order for his claim to survive summary judgment. The only evidence he provides does not say when a restricted speed order is typically issued, and so it cannot be used to allege a breach of a duty here. Finally, Garza has not presented any evidence to show that these particular facts demanded a reduced speed when the train had *already* reduced its speed to only 28 MPH. That is, Garza presents no evidence that NS "knew, or by the exercise of due care should have known[,] that prevalent standards of conduct were inadequate to protect the plaintiff." *Van Gorder*, 509 F.3d at 269-270 (internal quotation marks and edits omitted).

Garza instead relies on the assertion that the accident would have been avoided had the train been moving at a slower speed. But this assertion goes to causation, not negligence. "[T]he relaxed causation standard under FELA does not affect [plaintiff's] obligation to prove that [the railroad] was in fact negligent." *Id*. at 269. Garza has failed to show that NS breached its duty of care to Garza and so cannot establish a prima facie FELA case. Summary judgment in favor of NS was therefore appropriate on Garza's first claim.

**B.**

Garza's second claim is that NS negligently failed to post a flagman at the Toledo Street crossing; a flagman, he argues, would have prevented the accident. The district court again noted that Garza presented no evidence demonstrating that posting a flagman "would have been prudent in this situation." That is, Garza has not provided any evidence that NS breached its duty of care.

6

Garza presents no evidence that NS was required to post a flagman by law or that it is common practice to post a flagman in this situation. Nor, on the specific facts of this case, *see Van Gorder*, 509 F.3d at 269-270, was there any need to post a flagman. There was a stop sign at the crossing, the train sounded its horn, the train was not moving very fast to begin with, and the vehicle's driver had a clear view of the tracks. Garza cannot establish that NS breached its duty of care.

Garza emphasizes on appeal that he is entitled on summary judgment to a presumption that the truck driver would have stopped had a flagman been deployed. Again, were this true, it could only establish causation; it could not establish that NS was negligent. Besides, the vehicle's driver was given numerous warnings that a train was approaching and chose to ignore those warnings. Garza gives no reason why the driver would have heeded a flagman had one been posted. Because the record does not support a prima facie FELA case, summary judgment for NS on this claim was appropriate.

## C.

Garza's third claim alleges that NS breached its duty of reasonable care by using a locomotive with a faulty design, which, as used, impaired Garza's access to the emergency brake. At the time of the accident, the locomotive was running "backwards," that is, with the "back" of the locomotive forward and the cab seat swivelled around to face the same direction. This placed the throttle used to engage the emergency brake behind and to the right of the engineer. Garza's expert witness explained that this was the reverse of normal practice, in which the throttle is in front of the engineer and to the left: "A time-honored, industry-proven method of operating a locomotive is

7

thrown awry when a locomotive is constructed in reverse of the norm." Garza states in his affidavit that he needed to raise the seat arm to "fully maneuver" the throttle, which is necessary to engage the emergency brake.

The district court dismissed this claim because Garza could not show but-for causation, and we agree. Defense counsel expressly asked at Garza's deposition, "But you were not gonna be able to stop that train anyway when this guy pulled out in front of you no matter how it's configured; is that fair?" Garza responded, "I think the impact of, the timing of the impact would have changed. I mean it's a possibility, I really don't know." "[I]t's a possibility" falls short of the standard for but-for causation. *See, e.g., Przybylinski v. CSX Transp. Inc.*, 292 F. App'x 485, 489 (6th Cir. 2008) (finding testimony that a railroad's alleged negligence was one of several *possible* causes of plaintiff's injury was insufficient to establish a prima facie case). And neither Garza nor his expert witness claims that a different cab configuration would have prevented the accident. Thus, the district court correctly dismissed this claim on summary judgment because Garza is unable to show that the configuration of the cab was a but-for cause of the accident.

**D.**

The final claim relates to the location of the "alerter box." Garza claims that because the locomotive was running in reverse, this metal box was behind and to the right of the engineer's chair so that, on impact, Garza's head snapped back and hit the alerter box or the metal brace beneath it.

The district court granted NS's motion for summary judgment on this claim as well.[1] Garza cannot establish that NS breached its duty of reasonable care. The original design of the locomotive was acceptable—Garza's own witness concluded that "the locomotive is designed to be operated in either direction with no restrictions, other than crew placement and comfort." Nor can Garza prove that the original design did not comply with the LIA. Thus, any faulty design claim must be based on alterations made to the locomotive by NS.

And, in fact, Garza claims that the locomotive was reconfigured *the day after* the accident. After the accident, Garza alleges, a new chair was installed and the area around the alerter box was reconfigured. Thus, Garza's claim cannot be based on the present configuration of the locomotive either.

We must affirm the grant of summary judgment on this claim because Garza has failed to provide any facts showing that the configuration of the engineer's seat and the alerter box *on the day of the accident* constituted a breach of NS's duty of care. It is true that a court on summary judgment must draw all reasonable inferences in favor of the non-moving party, but summary judgment "requires the nonmoving party to go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Because we cannot rely on the original design of the locomotive or on the design of the locomotive as it appeared after the accident, and because Garza provides no evidence of the unique alterations NS allegedly made to the cab of the locomotive in between those two points in time, we must find that

---

[1] The district court examined the merits of this claim while analyzing whether Garza could demonstrate that the locomotive was not in compliance with the LIA.

9

Garza cannot point to any facts demonstrating the faulty design of the seat or faulty placement of the alerter box on the day of the accident. For this reason, the district court's dismissal of the claim on summary judgment is affirmed.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court granting summary judgment to NS on all four claims.