*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0471p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ELMER VAN GORDER,

>  *Plaintiff - Appellant,*

> *v.*

> No. 06-2451

GRAND TRUNK WESTERN RAILROAD, INC., a
division of Canadian National,

>  *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-70380—Gerald E. Rosen, District Judge.

Argued: September 17, 2007

Decided and Filed: December 11, 2007

Before: BATCHELDER and GILMAN, Circuit Judges; VARLAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Steven L. Kantor, KANTOR & GODWIN, Williamsville, New York, for Appellant. Richard A. Dietz, FOSTER, MEADOWS & BALLARD, Detroit, Michigan, for Appellee. **ON BRIEF:** Steven L. Kantor, KANTOR & GODWIN, Williamsville, New York, for Appellant. Richard A. Dietz, FOSTER, MEADOWS & BALLARD, Detroit, Michigan, for Appellee.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant Elmer Van Gorder ("Van Gorder") appeals the district court's order granting summary judgment in favor of Defendant-Appellee Grand Trunk Western Railroad ("Grand Trunk") in this negligence action filed pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* Van Gorder claims that the district court erred in finding that there were no genuine issues of material fact regarding the reasonableness of Grand Trunk's railcar inspections and that he had not established a prima facie negligence case. Finding no merit in Van Gorder's contentions, we **AFFIRM**.

---

[*] The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I. BACKGROUND

Van Gorder began working at Grand Trunk on July 22, 1970, more than 33 years prior to the incident in question, which occurred on October 17, 2003. Grand Trunk initially hired Van Gorder as a T-carman. From 1981 until the time of the incident, Van Gorder served as a carman at the General Motors loading dock on David Road, at Grand Trunk's Flint Yard in Flint, Michigan.

Van Gorder's main task on the day of the incident was to remove bridge plates between the loaded bi-level railroad cars and close the doors of the cars to prepare them for transport. Prior to this preparation and consistent with the railroad's usual practice, other Grand Trunk employees conducted two inspections of the railcars on which Van Gorder worked. Those "pre-trip" inspections are intended to discover defects in the cars and entail, among other things, looking at the doors to see visible problems, and opening, but not closing the doors.

In the course of his duties, Van Gorder attempted to close the "clamshell door" on one of the railcars. The door closed about halfway, or two to three feet, and then abruptly stopped, causing Van Gorder to stumble and his hands to slip off the door handle, resulting in an injury to his shoulder. Van Gorder is currently receiving approximately $2,600 per month in Railroad Retirement Disability because of his shoulder injury, for which he had replacement surgery on August 17, 2004.

Following the incident, Van Gorder immediately reported his injury to his superiors, then went to the hospital for examination. Robert F. Miller, Car Foreman, John P. Jacques ("Jacques"), Mechanical Department Supervisor and Technical Officer — Pool Operations, Ron Lord, Flint Assistant Superintendent, Hunt Carey, Flint Superintendent, and David Cromie, Risk Mitigation Officer, all inspected the railcar after Van Gorder returned from the hospital. Van Gorder was present for at least some of the inspection.

During the inspection, the Grand Trunk employees determined — through the process of elimination — that the canopy bolt on top of the AR door, which at least partially controlled the door's movement, was worn. Although the door opened properly, because of the condition of the bolt, the door would "hang up" and become stuck while it was being closed.

The defective bolt — or, at least, the defective condition of the bolt — was not visible from the ground. After the incident, Jacques got into a man-lift machine and viewed the door and bolt from above. The wear on the bolt was not visible from this vantage point either, because it was in an area "sandwiched between the roof and the canopy." That is, the defect would only manifest itself when someone attempted to close the door, and was only visible when the top portion of the door was taken apart. An inspection from above, either in a man-lift machine or from the ladders on the sides of the railcar, would not reveal the defect. Moreover, Grand Trunk does not allow its employees to climb up the ladders to the roof of the railcar without the proper safety equipment.

Van Gorder filed this negligence action against Grand Trunk on February 2, 2005, pursuant to FELA, 45 U.S.C. § 51, *et seq.* On September 27, 2006, the district court issued its opinion and order granting summary judgment in favor of Grand Trunk, concluding that no genuine issue of material fact remained for trial and that Van Gorder had failed to produce evidence from which a jury could find that Grand Trunk was negligent. Van Gorder timely filed this appeal.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, using the same standard applied by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). We must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In order to defeat a summary judgment motion, the nonmoving party must "show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986). That is, the nonmoving party must present sufficient evidence to permit a reasonable jury to find in that party's favor. *Id*. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *See also Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The party bearing the burden of proof must present a jury question as to each element of its case. *Hartsel*, 87 F.3d at 799 (citing *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

Van Gorder sued Grand Trunk under FELA, specifically alleging that Grand Trunk conducted an unreasonable and negligent inspection of a railcar that directly resulted in his injury. FELA provides in pertinent part:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. The statute contains a negligence standard. Consequently, to survive Grand Trunk's motion for summary judgment, Van Gorder needed to present evidence sufficient to raise a genuine issue of material fact as to every element of his negligence claim. *Celotex*, 477 U.S. at 322.

In order to present a prima facie case under FELA, Van Gorder must prove that: (1) he was injured within the scope of his employment; (2) his employment was in furtherance of Grand Trunk's interstate transportation business; (3) that Grand Trunk was negligent; and (4) that Grand Trunk's negligence played some part in causing the injury for which he seeks compensation under FELA. *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985) (internal citations omitted); *see also Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326, 330 (1958).

We will view the evidence in the light most favorable to Van Gorder, the nonmoving party. It is undisputed that Van Gorder injured his shoulder during the course of his employment, and he was furthering Grand Trunk's interstate transportation business in preparing the railcars for loading and transport. Therefore, Van Gorder has satisfied the first two of the required FELA elements. The fatal flaw in Van Gorder's complaint, however, is that he cannot show that Grand Trunk was negligent.

To succeed on his FELA claim, Van Gorder must "prove the traditional common law elements of negligence; duty, breach, foreseeability, and causation." *Adams v. CSX Transportation, Inc.*, 899 F.2d 536, 539 (6th Cir. 1990) (quoting *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987)); *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 258 (6th Cir. 2001). Van Gorder correctly contends that FELA relaxes a plaintiff's standard of proof regarding causation. *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500, 506 (1957) (ruling for the plaintiff-employee and stating that, under FELA, the "test of a jury case is whether the proofs justify with reason the conclusion

that employer negligence played any part, even the slightest, in producing the injury."). Therefore, *if* Grand Trunk were negligent, Van Gorder need only show that its negligence contributed even slightly to his injury. But, contrary to Van Gorder's assertions, the relaxed causation standard under FELA does not affect his obligation to prove that Grand Trunk was in fact negligent. *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598-99 (6th Cir. 2001).[1] FELA does not lessen a plaintiff's burden to prove the elements of negligence.

Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace; this does not mean that a railroad has the duty to eliminate all workplace dangers, but only the "duty of exercising reasonable care to that end." *Baltimore & Ohio S. W. R. Co. v. Carroll*, 280 U.S. 491, 496 (1930). Grand Trunk does not dispute that it had a duty to exercise reasonable care to protect Van Gorder, an employee. Thus, Van Gorder established the duty component of the negligence standard. Van Gorder cannot, however, show that Grand Trunk breached that duty.

A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe. *Tiller v. Atlantic C. L. R. Co.*, 318 U.S. 54, 67 (1943); *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 811 (6th Cir. 1990). That is, a railroad breaches its duty when it "'knew, or by the exercise of due care should have known' that prevalent standards of conduct were inadequate to protect [the plaintiff] and similarly situated employees." *Aparicio*, 84 F.3d at 811 (quoting *Urie v. Thompson*, 337 U.S. 163, 178 (1949)). A railroad must act reasonably and use ordinary care to protect its employees.

Van Gorder specifically alleges that Grand Trunk's pre-trip inspections were not reasonable and that by performing only those inspections, Grand Trunk breached its duty of care. Van Gorder contends that the manner in which the visual inspections were performed was not thorough enough to reveal the defective bolt, and that the pre-trip inspection was not undertaken with ordinary care because it did not include closing the clamshell doors, which would have exposed the defect. In attempting to prove that Grand Trunk's pre-trip inspections were unreasonable, Van Gorder relies almost exclusively on the sworn affidavit of his purported expert, Michael Micek ("Micek"). But Micek did not inspect the door of the railroad car at issue, nor does he state in his affidavit that he has any particular familiarity with either the type of car or the type of door at issue. He fails to point to any standard of care to which Grand Trunk failed to conform and he does not explain what kind of inspection would have been reasonable. Micek's affidavit simply makes the conclusory statement that Grand Trunk did not act reasonably because in its pre-trip inspections, it did not discover the defective bolt.

Van Gorder first claims that Grand Trunk would have discovered the defect if it had viewed the door from the roof of the railcar. In his affidavit, Micek claims that Grand Trunk employees could have climbed the ladder on the side of the rail car to its "upper most height" and seen the defect in the bolt. But Micek did not actually see the car, or climb the ladder. Jacques — who personally inspected the car — testified at his deposition that he could not see the defect in the bolt either from above the car or from the ground below. Furthermore, Jacques stated that it would be dangerous for an employee to climb the ladder to its upper-most heights without the proper safety equipment. There is no question that Jacques has substantial experience in dealing with the bi-level auto carrier railcars with clamshell doors, like the one in question. Nothing in the record establishes that Micek has any such experience.

---

[1] *Perkins* was decided under the Jones Act, 46 U.S.C. § 688. The court, however, stated that the Jones Act simply provides for seamen parallel rights that FELA provides railroad employees. *Perkins*, 246 F.3d at 598.

Most significant here, however, was Micek's inability to explain what would have constituted a proper inspection. Micek provided no specific information to explain why Grand Trunk's inspection was not reasonable. He provided no evidence to dispute Grand Trunk's specific, first-hand testimony that the defective bolt was not visible from any angle, and that to observe the defect, Grand Trunk had to take the door apart. Van Gorder cannot raise a genuine issue of fact regarding the reasonableness of Grand Trunk's inspection by suggesting that it should have used a different method to perform the inspection, when the method he advocates would not have revealed the defect that led to his injury.

Van Gorder next claims that Grand Trunk merely had to close the door to discover the defect; that closing the doors during the pre-trip inspection would be very easy for Grand Trunk; and that failure to do so made the pre-trip inspection unreasonable. We need not decide what might be easy for the railroad, nor need we indulge Grand Trunk's hypothetical assertions that, in this case, closing the door during the pre-trip inspection might simply "have provided us with a different plaintiff." We must decide only whether Grand Trunk conducted a reasonable inspection and exercised ordinary care. Van Gorder has not presented evidence and the record does not contain evidence sufficient to permit a reasonable jury to find that Grand Trunk's failure to require closing the door as part of the pre-trip inspection of the car made that inspection unreasonable.

Jacques testified that the pre-trip inspectors would ordinarily recognize a problem with the door upon opening it. Van Gorder himself testified that he had never encountered a door with a defect like the one in question, and that if a door were going to be defective, he "would usually know in the first few inches" of closing it. Van Gorder agreed that the door in question was unusual, and he presented no evidence that Grand Trunk knew or had reason to know of the particular defect in the door or that such a defect would cause the injury Van Gorder sustained. In short, Van Gorder presented no evidence from which a jury could find that Grand Trunk did not exercise ordinary care in performing the pre-trip inspection of the railroad cars, or that its method of pre-trip inspection of the cars was unreasonable.

Under FELA, the "test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part . . . in producing the injury." *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 116 (1963); *Rogers*, 352 U.S. at 506. If the record contains evidence from which the court could draw the conclusion that the employer's negligence played any part in the plaintiff's injury then it must send the case to the jury, even if the evidence would also allow the jury to find for the employer. *Id*. at 116-17. But a plaintiff cannot benefit from FELA's relaxed causation standard unless he can prove that the employer was negligent in the first place, and this Van Gorder has wholly failed to do.

The record in this case does not contain evidence sufficient to preserve a genuine issue of fact material to an element of Van Gorder's claim, namely, that Grand Trunk was negligent in its inspection of the car door. In the absence of that evidence, summary judgment for Grand Trunk was appropriate. *Celotex*, 477 U.S. at 322; *see also Hartsel*, 87 F.3d at 799.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.