<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 14a0267n.06

Case No. 13-1805

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED

Apr 10, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT A. LEWIS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WISCONSIN CENTRAL, LTD., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

---

BEFORE: BOGGS, SILER, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge. Robert A. Lewis, a railroad engineer employed by Wisconsin Central, Ltd. (WCL), was injured while exiting the door of a locomotive. He filed a negligence suit under the Federal Employers' Liability Act (FELA) and the Locomotive Inspection Act (LIA) alleging that a sliding bolt lock snagged his safety vest and caused him harm. The district court granted summary judgment to WCL. We **AFFIRM**.

**I.**

In 2008, Lewis and conductor Gary Everingham were operating a train from Sault Ste. Marie, Ontario to Trout Lake, Michigan. The train was being pulled by a locomotive designated as CN 5295. Upon reaching Trout Lake, Lewis attempted to go out the back door of CN 5295 to secure a handbrake. After pushing down the handle on the locomotive's back door to unlatch it,

Lewis asserts that his safety vest became caught on a sliding lock bolt as he moved through the doorway. He momentarily lost his balance and, while in the process of catching himself, injured his shoulder.

## II.

We review a district court's grant of summary judgment de novo. *Campbell v. Burlington N. & Santa Fe Ry.*, 600 F.3d 667, 671 (6th Cir. 2010). FELA provides that a railroad common carrier engaging in commerce:

> shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, . . . or other equipment.

45 U.S.C. § 51. To succeed on a FELA claim, a plaintiff must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990). Lewis accurately notes that FELA relaxes the standard of proof necessary for a plaintiff to prove causation. *See Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957). That relaxed standard, however, does not lessen a plaintiff's burden to prove the remaining elements of negligence. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007).

> The LIA provides that a railroad may use only locomotives that:
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. The LIA does not create an independent cause of action; instead, "[a] violation of the LIA is negligence *per se* under the FELA." *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 427 (6th Cir. 2010).

## III.

### A. FELA

Neither party disputes that under FELA a railroad has a duty to provide its employees with a reasonably safe workplace. *See Bailey v. C. Vt. Ry.*, 319 U.S. 350, 352-53 (1953). This does not mean, though, "that a railroad has the duty to eliminate all workplace dangers." *Van Gorder*, 509 F.3d at 269. "A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe." *Id.*

In this case, Lewis alleges that WCL breached its duty by (1) installing sliding bolt locks on its locomotive's doors, and (2) failing to repair an alleged defective sliding bolt lock on CN 5295. The district court correctly found that Lewis provided no evidence that WCL had breached its duty.

In 1988, WCL began installing sliding bolt locks in order "[t]o provide a reliable and low maintenance way of locking locomotive cab doors." William Stoltenberg, WCL's expert and its General Supervisor Mechanical, indicated that the sliding bolt locks were installed to "augment the existing door latches" to comply with 49 C.F.R. § 229.119(a). The Federal Railroad Administration (FRA) has never issued any citations or violations to WCL with respect to these locks.

Moreover, in the 20-year period from the sliding bolt locks' initial installation until this incident in 2008, there were no reported snag incidents from safety vests (or any other item)

from the more than 3,000 railroad employees who utilized the doors on WCL's locomotives. Indeed, Lewis admitted that most of the locomotives that he operated for WCL had sliding bolt locks and that he had never snagged himself before nor had he heard of anyone else snagging a safety vest (or anything else) on a sliding bolt lock. Fellow WCL employees Everingham and Spencer confirmed that they had never heard of a snag caused by a slide lock during the decades they have worked in the railroad industry.[1]

With regard to the design of the sliding lock, Lewis contends it increased the risk of injury because the lock protruded out into the narrow doorway when the door was open. The photographs of the locomotive door that are part of the record, however, show that the bolt from the lock runs parallel to the door. When the door is open, even if the lock is in the extended position, the bolt points in the same direction as the door, i.e., down the catwalk. Thus, the bolt does not protrude into the doorway – a fact acknowledged by Spencer and Everingham as well as by Lewis's expert. Additionally, Lewis concedes that the bolt and housing of the lock had "nicely rounded" parts, thereby reducing the risk of clothing snags.

Lewis attempts to support his defective-design claim by referencing a snagging incident experienced by Parrish Silbernagel, a WCL trainmaster. However, Silbernagel indicated that he caught his safety vest on the *door latch* – not the sliding bolt lock. This evidence involves an entirely separate mechanism with a different potential for snagging; it is irrelevant for assessing whether a sliding bolt lock increases the risk of injury.

Lewis also asserts that the risk of harm was increased because the safety vest he was wearing did not tear away as it should have when it became snagged. As the district court pointed out, though, Lewis offered conflicting answers when asked if his vest was secured

---

[1] Spencer's ten-year tenure on the union's safety committee put him in a position to hear hundreds of complaints, yet the issue of snagging safety vests on sliding locks never arose.

properly. If not secured, it is unclear whether the vest would have worked as designed. In any event, Lewis offered no evidence that the vest was defective.

Finally, Lewis contends that WCL breached its duty by not recognizing the specific sliding bolt lock on CN 5295 was defective and needed replacement. This assertion, too, is unsupported by competent evidence. Lewis concedes that he was responsible for insuring the locomotive had been inspected prior to his using it, yet he took no exception to the slide lock before beginning his work on the day in question. Throughout his trip from Sault Ste. Marie, he sat within a few feet of the lock and admitted using the door a few times during the shift without incident. After his injury, Lewis's report made no mention of the locking bolt being bent or otherwise defective. Similarly, an inspection of the locomotive completed just after the incident by WCL supervisors Belanger and Silbernagel also found no defect with the slide lock. Silbernagel confirmed that the sliding bolt lock was working as it was intended, and Belanger took photographs that show that the lock was not bent or otherwise marred. Although Lewis's expert inspected the slide lock and found it had a bent finger handle, that inspection occurred *four years* after the incident.

Having found that Lewis offered no evidence that WCL breached its duty to provide a reasonably safe workplace, we need not examine the remaining elements of negligence.

## B. LIA

Since Lewis cannot show that WCL failed any inspection or violated any regulation with respect to its sliding bolt locks, he can only establish liability if the lock on CN 5295 was not "in proper condition" or operated with "an unnecessary danger of personal injury." 49 U.S.C. § 20701(1). Although Lewis's expert contends that "[a] door lock that is capable of becoming entangled in an employee's clothing is exactly the type of condition [the LIA] is intended to

prevent," he admits that "[i]f the locking bolt had been properly retained in its unlocked position, it could not have migrated outward and caused a snagging hazard." Thus, as the district court pointed out, the assertion by Lewis's expert that the lock presented an unnecessary risk of injury is premised on the sliding bolt lock's malfunctioning. However, for the same reasons analyzed above, Lewis failed to offer any reliable evidence that the sliding bolt lock on CN 5295 was not working properly.

**IV.**

The district court properly granted WCL summary judgment because Lewis was not able to offer evidence that the railroad breached its duty of care under FELA or created an unnecessary risk of harm under the LIA. We do not reach the preclusion defense raised by WCL, as it is unnecessary to decide this case.

**AFFIRMED**.