**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0162n.06

**Case No. 14-1836**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ANTHONY DURSO, | ) | **FILED**<br>Mar 02, 2015<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| GRAND TRUNK WESTERN RAILROAD | ) | DISTRICT OF MICHIGAN |
| COMPANY, | ) |  |
|  | ) |  |
| Defendant-Appellee. | ) |  |
|  | ) |  |

**O P I N I O N**

BEFORE: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Anthony Durso, a carman at Grand Trunk Western Railroad Company, injured his shoulder while positioning himself under a railcar to make a brake repair. He sued Grand Trunk for negligence under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, seeking damages for his injury. The district court granted summary judgment in favor of Grand Trunk. We affirm.

Durso, a thirty-six-year employee of Grand Trunk, worked most of his career in the Pontiac Yard where he inspected, repaired, and maintained railcars. On the day of the injury, Durso was working with another carman, Patrick Mardney. Around noon, Mardney told Durso that a brake adjustment on a tank railcar was needed to adjust a long piston to comply with

Federal Railroad Administration regulations. If the piston is too long, the brakes cannot sufficiently stop the car. Durso offered to fix it. He estimated that he had performed this repair about 30 times before without injury.

To perform this repair, Durso explained, he must position himself on his back underneath the car and between the wheels so that he can remove the cotter pin, adjust the brake linkage, and then replace the cotter pin. There is not enough vertical space to crawl underneath the railcar on his knees, so positioning his body in this manner requires some maneuvering. To get underneath the car, Durso would place a plastic mat along with the required tools next to the wheels and lay down on his side. He would then "scootch" his body underneath the car while still on his side. Durso explained in his deposition that on this particular occasion, while "scootch[ing]" on his right side to get farther underneath the railcar, he slipped off the mat and "jam[med]" his right shoulder into the cement floor underneath him. R. 16-3 at Page ID # 142. He immediately felt pain in his shoulder and crawled out from underneath the car. Because he was in too much pain to return to work, he went to a hospital in Pontiac for an examination. When he returned from the hospital, he gave an audio statement describing the incident to the Risk Mitigation Officer. Notably, his initial statement conflicted with his deposition statement. On the day of the injury, Durso stated that the mat was underneath his shoulder when his shoulder jammed, but at his deposition, he said that his shoulder jammed into the concrete floor.

Durso's injury escalated and required surgery. He sued Grand Trunk, arguing that it failed to provide him with a safe working environment as required by the Federal Employers' Liability Act because Grand Trunk did not provide him with a proper-sized mat to perform the repair on a concrete floor. Alternatively, Durso argued, the repair should have been performed in a work pit or with a dolly. The district court granted summary judgment in favor of Grand Trunk

concluding as a matter of law that Grand Trunk had not breached its duty of due care in failing to provide a longer mat or failing to require brake repairs like this one be conducted in a work pit. We agree.

We review *de novo* a district court's grant of summary judgment. *Van Gorder v. Grand Trunk Western R.R. Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. We view all evidence and make all inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). In the context of claims under the Federal Employers' Liability Act, courts favor jury resolution of all colorable factual issues. A plaintiff must "'present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more.'" *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 259 (6th Cir. 2001) (quoting *Aparicio v. Norfolk & Western Ry. Co.*, 84 F.3d 803, 810 (6th Cir. 1996)).

To show negligence under the Federal Employers' Liability Act, Durso must show that: (1) an injury occurred while he was working within the scope of his employment with Grand Trunk, (2) the employment was in furtherance of Grand Trunk's interstate transportation business, (3) Grand Trunk was negligent, and (4) Grand Trunk's negligence played some part in causing the injury for which compensation is sought. *Van Gorder*, 509 F.3d at 269; *see also* 5 U.S.C. § 51. Under this scheme, a railroad must provide its employees with a reasonably safe workplace. *Van Gorder*, 509 F.3d at 269. A railroad breaches that duty "when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe." *Id.* To be

actionable, the railroad must have known or should have known that the standards of conduct were not adequate to protect its employees. *Id.* at 269–70.

Durso argues that Grand Trunk breached its duty to provide a reasonably safe workplace by failing to provide a work pit, a dolly, or a longer mat for this type of repair. His arguments fail. Although it may have been easier for employees to perform this repair in a work pit, there is no evidence that the lack of a work pit made the repair unreasonably *unsafe*. There is also no evidence that Grand Trunk knew or should have known about any alleged defect and then had an opportunity to correct it, as is required. *Id.* at 269–70 (citation omitted); *see also Miller v. Cincinnati, New Orleans & Texas Pac. Ry. Co.*, 317 F.2d 693, 695 (6th Cir. 1963). In fact, Grand Trunk has been using this method at the Pontiac facility without work pits or dollies and without incident for as long as Durso has worked with Grand Trunk. Regarding the plastic mat, we are not convinced that the mat served any purpose other than convenience, because as Durso recognized, it was not required to make the repair. Because Durso cannot make out a prima facie case of negligence, summary judgment was proper.

Durso relies on his expert's affidavit and on *Gorman v. Grand Trunk Western R.R., Inc.*, No. 07-cv-12911, 2009 WL 2448604 (E.D. Mich. Aug. 10, 2009), to show there is a genuine issue of material fact. Neither provides him help. First *Gorman*, as in this case, addressed Grand Trunk's failure to provide work pits for certain repairs that required the employee to work while kneeling or on the employee's side. *Id.* at *2. The plaintiff in that case developed long-term injuries from repeatedly lifting heavy objects while lying in an awkward position making repairs. *Id.* at *6. The court concluded that there was sufficient evidence for a jury to conclude under the circumstances that the lack of work pits was unreasonably dangerous. *Id.* at *7. As the district court here pointed out, however, this case is different. Durso was not repeatedly performing

repairs and lifting heavy objects while in an awkward position. This is an acute injury. Moreover, in *Gorman*, there was some evidence that Grand Trunk had changed its practice from using work pits in the past to performing the repairs without them. *Id.* Here, employees had long been adjusting brake pistons in this manner without any incident.

Next, Durso's expert claims that one of Grand Trunk's safety rules applies here. Safety Rule M-17 requires an employee to keep an even weight distribution and stable footing when using hand tools. To comply with that rule, he argues, work pits were required. But this rule was clearly pertaining to repairs that require stable footing while standing to prevent falls. When making the kind of repairs at issue here, the employee is lying underneath the rail cars with no risk of falling. Durso cannot show that Grand Trunk failed to provide a reasonably safe work environment under these circumstances.

Because Durso has not presented sufficient evidence of negligence, we affirm.