**Joseph DIXON, Plaintiff,**

v.

**GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant.**

**Case No. 2:13–cv–14340**

United States District Court, E.D. Michigan, Southern Division.

Signed 11/22/2016

claim fails for the same reasons as stated      above.

Benjamin J. Wilensky, Arvin J. Pearlman, Sommers Schwartz, P.C., Southfield, MI, Charles Richard Cranwell, Cranwell, Moore, Roanoke, VA, for Plaintiff.

Joseph J. McDonnell, Mary C. O'Donnell, Durkin McDonnell, P.C., Detroit, MI, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF DR. WIDMEYER (document no. 41), DENYING DEFENDANT'S MOTIONS TO EXCLUDE TESTIMONY OF DR. ANDRES (document no. 42), PLAINTIFF'S THEORY OF GENERAL MEDICAL CAUSATION (document no. 44), AND FOR SUMMARY JUDGMENT (document no. 43), AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO LIMIT THE OPINIONS OF EXPERTS (document no. 47)**

STEPHEN J. MURPHY, III, United States District Judge

Joseph Dixon worked as a carman for Defendant railroad company Grand Trunk

Western Railroad Company ("Grand Trunk"). Dixon's job involved a lot of stooping, squatting, and kneeling, and he alleged in a complaint that those work conditions contributed to the osteoarthritis in his knees from which he now suffers. To prove his case, Dixon retained two experts: Dr. Robert Andres, an ergonomics expert, and Dr. Robert Widmeyer, an orthopedic surgeon. For its part, Grand Trunk retained Dr. Laura Wojcik, a biomechanical engineer, and David Brookings, a civil engineer.

Each party now moves to exclude the other's expert testimony. Grand Trunk moves to exclude the testimony of Dixon's experts on the grounds that they have not sufficiently investigated the particulars of Dixon's condition and history, and that neither's methodology satisfies *Daubert.* *See* Mots., ECF Nos. 41, 42. Dixon challenges portions of Dr. Wojcik's opinion as being outside her expertise and also makes a procedural argument that both her testimony and Brookings' were untimely and should therefore be excluded. Mot., ECF No. 47.

In addition to the motions on expert witnesses, Grand Trunk argues that Dixon's general medical causation theory itself should be excluded due to the alleged failures of the experts to satisfy *Daubert.* Mot., ECF No. 44. And finally, Grand Trunk made a motion for summary judgment, which Dixon has challenged on substantive and procedural grounds. Mot., ECF No. 43; Resp., ECF No. 54.

## LEGAL STANDARDS

### I. Federal Employers' Liability Act ("FELA")

██ FELA provides in relevant part that:

> [e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. FELA is not a worker's compensation scheme and under it "[t]he employer is not held to an absolute responsibility for the reasonably safe condition of the place, tools, and appliances, but only to the duty of exercising reasonable care to that end." *Baltimore & Ohio S.W. R.R. Co. v. Carroll*, 280 U.S. 491, 496, 50 S.Ct. 182, 74 L.Ed. 566 (1930). To recover under the Act, an injured employee must therefore "prove the traditional common law elements of negligence; duty, breach, foreseeability, and causation." *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007). In light of the Act's remedial purpose, however, the causation requirement is more "relaxed"—a railroad causes or contributes to a railroad worker's injury if "negligence played a part—no matter how small—in bringing about the injury." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692, 705, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011).

### II. Admissibility of Expert Testimony

Rule 702 governs expert testimony. The rule permits an expert to testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court's decision in *Daubert* provided additional context for employing the rule. When faced with a proffer of expert testimony, a trial court must first determine under Rule 104(a), "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court is required to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. 2786.

■ Although the *Daubert* court mentioned certain factors a trial court might consider, *see id.* at 592–94, 113 S.Ct. 2786, the factors are not meant to be requirements in every case. *See In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 529 (6th Cir. 2008) ("[t]he *Daubert* factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case.") (citations omitted). Instead, *Daubert* factors "should be applied only 'where they are reasonable measures of the reliability of expert testimony.'" *Id.* (quoting *Gross v. Comm'r,* 272 F.3d 333, 339 (6th Cir. 2001)).

■ In all cases, the burden of establishing the admissibility of expert testimony rests on the party offering the testimony. *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir. 2000). And though "the rejection of expert testimony is the exception rather than the rule," the offering party must establish its admissibility by a preponderance of proof. Fed. R. Evid. 702 Advisory Committee Note; *Nelson v. Tenn. Gas*

*Pipeline Co.,* 243 F.3d 244, 251 (6th Cir. 2001).

## STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[ ] of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.,* 819 F.3d 834, 848 (6th Cir. 2016). At the summary judgment stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.,* 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). But a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## DISCUSSION

I. Grand Trunk's Motions to Exclude the Testimonies of Robert Widmeyer, MD and Robert Andres (ECF Nos. 41, 42)

Grand Trunk's motions to exclude the testimony of Dixon's experts are substantively similar to each other. Both motions allege that the experts' methods fail to meet the requirements of Rule 702 and *Daubert,* and for many of the same rea-

sons. The Court will address the issues raised in both motions and then address arguments unique to each.

## A. The *Daubert* Factors

Grand Trunk lists the *Daubert* factors and argues that the experts' failure to satisfy the factors renders their opinions inadmissible under Rule 702. Grand Trunk is wrong for two reasons. First, the *Daubert* factors are not requirements in all cases. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case."). And second, to the extent the factors do apply to the expert testimony in the present case, the testimony satisfies them. Grand Trunk simply misapplies the factors or misstates the experts' opinions.

■ For instance, Grand Trunk argues that because there are no studies "showing an increased incidence of knee OA[1] among railroad workers generally, or car inspectors specifically," the experts' opinions are without support. Andres Mot. 10, ECF No. 42; *see also* Widmeyer Mot. 13, ECF No. 41. But this type of specificity is not required, even if the factor applies. Andres reviewed articles addressing the risks associated with the sorts of repetitive tasks Dixon allegedly did every day at work. *See* Andres Report 14–18, ECF No. 54–4. Andres even authored two peer-reviewed articles specifically addressing ergonomic risks faced by railroad workers. *See* Resp. 21 n.3, ECF No. 52. Widmeyer testified that, although he did not re-review scholarship in formulating his opinion in this case, he was well-versed with peer-reviewed articles on OA and a list of the articles was provided. *See* Widmeyer Dep. 30–31, ECF No. 41–2; Articles List, ECF No. 53–5. In sum, after reviewing peer-

reviewed literature, both experts applied the information to the facts in this case— precisely the sort of process called for by *Daubert.*

■ In like manner, Grand Trunk argues that unless the experts can specify, for example, precisely how many squats would be "too many," they have no way of opining that Dixon exceeded the threshold. The Sixth Circuit addressed this argument squarely in another railroad-worker case, *Hardyman v. Norfolk & W. Ry. Co.*:

> [I]t makes little sense to require a plaintiff to establish a dose/response relationship or threshold level in a situation where there has been no scientific study conducted specifically on railroad brakemen and where the dose/response relationship or threshold level will always vary from individual to individual. Such a requirement essentially would foreclose plaintiffs from recovering for [carpal tunnel syndrome] against negligent employers unless their particular job has been the subject of a national, epidemiological study on [carpal tunnel syndrome].

243 F.3d 255, 265 (6th Cir. 2001). Dr. Andres spoke with Dixon, determined how many of each movement he likely performed over the course of his 20–year career, and determined that those motions could likely cause the sort of OA from which Dixon suffers. *See* Andres Report 20, ECF No. 54–4; Andres Dep. 46, 65–66; ECF No. 42–2. Nothing more is necessary to satisfy Rule 702; Grand Trunk's dose/response demand is unfounded.

■ . Grand Trunk also criticizes the experts' reports by noting that neither expert ever visited the railyard where Dixon worked. Instead, Andres and Widmeyer took Dixon at his word in describing family medical history and the tasks he did at

---

1. "OA" is a common abbreviation for osteoarthritis.

work. *See* Widmeyer Mot. 3, ECF No. 41; Andres Mot. 2, ECF No. 42. But experts are not required to independently verify a patient's self-reported history. *See United States v. Waddell*, 28 F.3d 1215, 1994 WL 279390, at *5 (6th Cir. 1994) (Table) ("Advisory Notes to Rule 703 specify that an expert may rely on statements by patients and relatives and that the physician's validation of such hearsay statements 'ought to suffice for judicial purposes.'"). Moreover, both experts have experience with railyards similar to Dixon's and there is no suggestion that the yards varied in any meaningful way.

The resolution to each of Grand Trunk's *Daubert* objections is the same: they are properly addressed through cross-examination, not exclusion of the testimony altogether.

### B. Specific Arguments

#### 1. Widmeyer's Diagnosis Method

■ It is undisputed that Widmeyer did not conduct any tests (other than a personal examination of Dixon), perform studies, or personally visit Dixon's work site. Instead, Widmeyer used a process of elimination—called a "differential diagnosis" or "differential etiology"—to determine the cause of Dixon's injury. Grand Trunk argues that the methodology, as used here, fails to meet the *Daubert* standard. Widmeyer Mot. 11, ECF No. 41.

The Sixth Circuit has approved the use of differential etiology in cases similar to this one. *See, e.g., Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010) ("Many courts, including our own, allow experts to employ a rule-in/rule-out reasoning process for etiology as well as diagnosis—essentially, a 'differential etiology'"). The Circuit's approach is grounded, in part, on the premise of a differential etiology amounting to a small, scientific study of the plaintiff himself. *See Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d

255, 262 (6th Cir. 2001). But such testimony is not automatically admissible; the Court must still apply the *Daubert* principles in considering its admissibility. *See Tamraz*, 620 F.3d at 673. The Sixth Circuit echoed the Fourth Circuit in elaborating what makes a differential etiology reliable for the purposes of *Daubert*:

> A reliable differential diagnosis typically, though not invariably, is performed after physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests, and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.

*Hardyman*, 243 F.3d at 260–61 (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)) (internal quotation marks omitted).

■ Clearly, then, "[n]ot every opinion that is reached via a differential-diagnosis method will meet the standard of reliability required by *Daubert*." *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 179 (6th Cir. 2009). In *Tamraz*, a doctor concluded that manganese exposure was the cause of a plaintiff's disease because other causes had been ruled out and some scientific literature suggested manganese might be the cause in cases like the Plaintiff's. The court rejected the testimony because the doctor's line of reasoning involved too many speculative jumps. *See* 620 F.3d at 671. In contrast, the diagnosis in *Hardyman* was determined to be admissible because the doctor "took an extensive history of [the plaintiff's] non-occupational work activities," reviewed his medical history, and reviewed the various movements the plaintiff was required to perform at his job. *See Hardyman*, 243 F.3d at 261–62.

Here, Widmeyer personally examined Dixon and evaluated his movements and the condition of his knees. Widmeyer Report 6, ECF No. 53–3. He asked Dixon about whether he experiences pain performing tasks outside of work and reviewed his medical history. Widmeyer Dep. 40–44, 75–76, ECF No. 53–2. Widmeyer reviewed imaging of Dixon's knees and his medical and military records, and read Dixon's sworn deposition testimony. Widmeyer Report 1, ECF No. 53–3. And after Widmeyer took all of the facts into account—along with his familiarity with at least 59 peer-reviewed articles and a working knowledge of train yards similar to Dixon's—he concluded that the most likely cause of Dixon's injuries was his 20–plus years of doing strenuous tasks at work, compounded by his weight. *Id.* at 11; Widmeyer Dep. 30–31, ECF No. 53–2.

Widmeyer's methodology satisfies *Daubert.* Exclusion of his testimony on those grounds is unwarranted.

### 2. Widmeyer's Right–Knee Diagnosis

■ Grand Trunk points out that Dixon's treating physicians never diagnosed him with OA in his right knee, only his left. Widmeyer Mot. 15–16, ECF No. 41. Yet Widmeyer seemed to rely on the opinions of those physicians in determining that Dixon has OA in both his knees. *Id.*; Widmeyer Dep. 80, ECF No. 41–2. Widmeyer personally examined Dixon, but did not conduct an extensive diagnosis as to whether the right knee had OA. *See* Widmeyer Dep. 41–42, ECF No. 41–2. Grand Trunk therefore argues that "any testimony from Dr. Widmeyer that plaintiff has right knee OA should be excluded under Rule 702 as lacking sufficient basis in fact or data." Widmeyer Mot. 16, ECF No. 41.

The Court agrees. Unlike Widmeyer's diagnosis as to the likely cause of OA—wherein he ruled in and ruled out possibilities—his conclusion as to the existence of OA was not based on any significant inves-

tigation. Although Widmeyer did perform some range-of-motion tests with Dixon, there is no showing that the tests were reliable in diagnosing OA, and there is no evidence that Widmeyer performed a reliable differential diagnosis of right-knee OA. Consequently, the Court will grant Grand Trunk's motion on the issue and exclude that part of Dr. Widmeyer's testimony regarding the existence of OA in Dixon's right knee.

### 3. Andres's Causation Testimony

Andres is an ergonomist, not a medical doctor. Both parties agree that he is not permitted to provide an opinion as to the cause of Dixon's injuries. Grand Trunk argues that "any such opinions should be excluded." Andres Mot. 5, ECF No. 42. Dixon agrees, and points out that no such testimony has been advanced. Resp. 11–13, ECF No. 52. Unless and until Grand Trunk points to specific causation testimony already on the record that must be excluded, no action by the Court is necessary.

## II. Grand Trunk's Motion to Exclude General Causation Testimony

The arguments raised in the motion on the general causation theory mirror those of the motions regarding Drs. Widmeyer and Andres. The Court will deny the motion for the same reasons stated above.

## III. Grand Trunk's Motion for Summary Judgment

Grand Trunk has filed a second motion for summary judgment; the first was made in February 2015, before the close of discovery. *See* Mot. Summ. J., ECF No. 11. The previous motion put forth two arguments: (1) Dixon's claim is time-barred under FELA, and (2) Grand Trunk was without notice of the unsafe conditions. *Id.* The Court denied the motion, on the basis that a "reasonable jury could find

that Dixon should not have discovered his injury prior to 2011. Furthermore, Grand Trunk's contention that Dixon failed to show notice is premature, because discovery is not yet complete." Order 9, ECF No. 23.

In the present motion, Grand Trunk raises three arguments: (1) Dixon failed to produce evidence that working conditions were unsafe, (2) Dixon failed to produce evidence that negligence was the cause of his injuries, and (3) if the *Daubert* motions are granted, Dixon will not be able to produce admissible evidence to prove causation. Mot. Summ. J., ECF No. 43.

### A. Grand Trunk's Failure to Seek Leave

■ At the outset, Dixon notes that Grand Trunk failed to seek leave to file a second motion for summary judgment, in violation of Local Rule 7.1(b)(2). Dixon argues that the motion should be dismissed for that reason. Resp. 14, ECF No. 54. Grand Trunk argues that when the Court ruled the previous motion for summary judgment "premature," it implicitly allowed Grand Trunk to file again at the close of discovery. Reply 6, ECF No. 62. The Court finds no prejudice to Dixon in considering Grand Trunk's second motion and will accordingly address the merits of it.

### B. Lack of Evidence of Unsafe Conditions

■ Grand Trunk argues that Dixon has not provided evidence to prove that Grand Trunk "failed to provide him with a reasonably safe workplace or failed to provide reasonably safe and suitable tools and equipment." Mot. Summ. J. 3, ECF No. 43. In support, Grand Trunk again raises its dose/response and threshold arguments. *See id.* at 5. In essence, Grand Trunk argues that if Dixon's experts cannot determine how much bending, squatting, etc. was "too much," there is no way to deter-

mine if Grand Trunk was negligent in the amount of such activity it allowed employees to engage in. But even though Grand Trunk's argument, if successful, would not prevent Andres from testifying as an expert, the standard of review regarding a motion for summary judgment is different than the standard under Rule 702 and therefore requires a separate analysis.

■ In FELA cases like this one, the question is whether the employer's negligence played any part, "even the slightest," in producing the injury for which the plaintiff seeks recovery. *Hardyman*, 243 F.3d 255 at 259. The railroad need not foresee the specific type of injury or the manner in which the injury might occur; just that some injury may occur. *See Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 814 (6th Cir. 1996), *abrogated on other grounds, Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Plaintiffs in these cases must "present more than a scintilla of evidence ... on the issue of employer liability, but not much more." *Id.* at 810.

In *Aparicio*, as here, an employee brought a FELA suit against his railroad employer, alleging the repetitive and strenuous of his job caused him lasting injuries. Andres testified in that case, too, raising many of the same arguments and sources he mentions here. The court noted:

> The testimony of Dr. Robert Andres, Aparicio's ergonomics expert, shows that there were ergonomic risk factors and known remedial measures that had been described and accepted by the scientific community. This information was widely published in trade and scientific journals. A jury could accept Dr. Andres' testimony and find that a reasonably prudent employer would have known about the risk factors and taken steps to ameliorate them....

Construing the evidence in a light favorable to Aparicio, he has presented more than a scintilla of evidence to show that [defendant railroad] should have known that he was at risk for developing an upper extremity cumulative trauma injury and that a reasonably prudent employer would have taken steps to ameliorate the risk of injury.... Dr. Andres also testified that an industrial employer like [defendant railroad] would learn of these ergonomic risk factors, as well as of methods of determining whether an employee was exposed to a risk of injury and methods of amelioration, through scientific and professional publications, trade journals and industry publications. Further, Dr. Andres stated that an employer like [defendant railroad] would know of the ergonomic literature through its medical department or safety person.

*Id.* at 811–12.

Here, Andres testified that Grand Trunk's ergonomic practices fell short of those that are standard in the industry—testimony that, despite Grand Trunk's objection, was not a legal conclusion, but well within the ambit of Andres's expertise and observation. Andres Dep. 110–11, ECF No. 42–2. Andres's report listed many sources, including publications of the Occupational Health and Safety Administration (OSHA), that detailed the risks Dixon allegedly faced at work. *See* Andres Report 4–8, ECF No. 38–4. In light of the sources listed, and construing the evidence in a light favorable to Dixon, the Court finds that he has presented more than a scintilla of evidence to show that Grand Trunk "should have known that he was at risk" for developing OA and "that a reasonably prudent employer would have taken steps to ameliorate the risk of injury." *Aparicio*, 84 F.3d at 811. Summary judgment is unwarranted on those grounds.

**C. Lack of Evidence Proving Causation**

Grand Trunk argues that even if Dixon proves that it was negligent by not establishing an ergonomics program and instead allowed Dixon to overtax his joints, he still cannot prove that any negligence was a cause-in-fact of his injuries. Dixon has two experts: Andres and Widmeyer. Andres's testimony demonstrates that the tasks Dixon was given would overtax a person's joints and are capable of causing OA. Widmeyer gives evidence that the most likely cause of Andres' osteoarthritis was overtaxing his knees, specifically at work. Thus, if the experts' testimony is believed, the causal chain is complete, especially in light of the fact that there is a "relaxed" standard of causation in FELA cases. *See Hardyman*, 243 F.3d at 259. Because there is evidence upon which a reasonable jury could find that Grand Trunk's alleged negligence caused, in part or in whole, Dixon's injuries, summary judgment is unwarranted.

**D. Lack of Admissible Evidence**

Grand Trunk argues that if the Court grants its *Daubert* motions to exclude Dixon's expert testimony, summary judgment is appropriate. But because the Court will deny those motions—other than the portion regarding Widmeyer's right-knee diagnosis—the argument is inapposite.

**IV. Dixon's Motion to Limit Expert Testimony**

Dixon challenges the testimony of Grand Trunk's retained expert, Dr. Wojcik, on two grounds. First, he argues that because Dr. Wojcik is a biomechanical engineer and not a medical doctor, she may not testify "as to specifically Joe Dixon's claimed injuries or to whether his job duties as a carman caused or contributed to any of his injuries[.]" Mot. to Partially

Limit Opinions 8, ECF No. 47. Second, Dixon argues that certain testimony from Dr. Wojcik, as well as Mr. David Brookings, was untimely and should therefore be excluded. *Id.* at 12–16.

After reviewing the parties' filings and having held a hearing, the Court believes that these matter will be more effectively and efficiently addressed in a renewed motion in limine made closer to the trial date. The Court will deny the motion without prejudice for renewal.

## ORDER

**WHEREFORE**, it is hereby **OR-DERED** that Defendant's Motion to Exclude the Testimony of Dr. Widmeyer (document no. 41) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude the Testimony of Dr. Andres (document no. 42) is **DE-NIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion Exclude Plaintiff's Theory of General Medical Causation (document no. 44) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (document no. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Limit Expert Testimony (document no. 47) is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**